ESTATE OF ROGER M. CHOWN, DECEASED, HOWARD B. SOMERS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF HARRIET H. CHOWN, DECEASED, HOWARD B. SOMERS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3232–67, 3233–67. Filed October 23, 1968.

*H. Myron Gleason,* for the petitioners.
*John D. Picco,* for the respondent.

### OPINION

TIETJENS, *Judge:* The Commissioner determined deficiencies in estate tax for the taxable year 1964 in the amounts of $29,488.14 and $27,045.81, respectively, for the separate estates of Roger M. Chown and Harriet H. Chown, deceased.

The deficiencies were determined by including in the gross estates of both decedents $102,389.40, representing the proceeds of a life insurance policy owned by Harriet H. Chown and insuring Roger M. Chown. The Commissioner has bound himself by his stipulation that the deficiencies of the two estates have been determined in the alternative.

All of the facts have been stipulated and are so found.

Roger M. Chown (hereinafter sometimes referred to as Roger) and Harriet H. Chown (hereinafter sometimes referred to as Harriet), were husband and wife residing in Portland, Oreg., prior to their deaths. On February 25, 1964, they were killed in the crash of a commercial airliner near New Orleans, La. Their deaths were simultaneous.

Roger was 53 years old and Harriet 52 years old on the date of their deaths. Both died testate. Each left substantially all his estate to the other, and designated their children substitute legatees in the event of the other's prior death.

At the time of her death, Harriet was the absolute owner of all rights in a life insurance policy on Roger's life. The policy named Harriet primary beneficiary and their children secondary beneficiaries. The Probate Court of Multnomah County, Oreg., determined ex parte that Roger and his wife died simultaneously. The insurance company paid the proceeds of the policy—$102,389.40 representing $100,000 plus accrued interest and dividends of $2,389.40—to the children as the secondary beneficiaries named in the policy.

In preparing decedents' estate tax returns, the common executor and petitioner herein, Howard B. Somers, included no part of the insurance proceeds in Roger's gross estate but did include $8,046.16 in Harriet's gross estate. The $8,046.16 amount comprises interpolated terminal reserve value of $5,840.40, unearned premium of $1,078.04, and dividend accumulation of $1,127.72.

The parties appear to be in agreement that at least the $8,046.16 is includable in the gross estate of Harriet H. Chown under section 2033, I.R.C. 1954,[1] which provides:

> The value of the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death.[2]

The petitioner contends that $8,046.16 is the full value for estate tax purposes of the policy to the extent of Harriet's interest therein at the time of her death.

The Commissioner argues for the larger inclusion in Harriet's gross estate of $102,389.40, an amount equal to the total proceeds that were actually paid under the policy. He argues for this result under either of two alternative assumptions: (1) Either Roger died momentarily before Harriet, and the proceeds were receivable by her as primary beneficiary under the terms of the policy; or (2) Harriet died momentarily before Roger and the value of her interest in the policy at the time of her death was equal to the proceeds payable under the policy because the policy, at that instant, was virtually "fully matured."

In the alternative, the Commissioner argues that the full amount of the proceeds may be included in the gross estate of Roger M. Chown in the event that he is deemed by proof or presumption to have survived Harriet. The argument follows that in the event Roger momentarily survived Harriet, as residuary legatee under her will he would have died possessing the incidents of ownership on a policy of

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

[2] We entertain no doubt that petitioner properly made such concession. At her death Harriet possessed all the incidents of ownership in the policies on Roger's life. In the event she had predeceased Roger, an amount equal to the replacement value of the policies would have been includable in her estate. *Estate of Ethel M. Donaldson*, 31 T.C. 729 (1959). Although under State law she had no right to the proceeds as beneficiary in the event she died simultaneously with Roger, she retained until the instant of death the power to change secondary beneficiaries and, thus, to control the disposition of the entire proceeds in that event. The termination of this power at her death "so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death." *Chase Nat. Bank* v. *United States*, 278 U.S. 327, 335 (1929). And it is no answer to assert that Harriet had no practical opportunity to exercise her powers immediately prior to her death since estate tax liability "depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment." *Commissioner* v. *Noel Estate*, 380 U.S. 678, 684 (1965).

life insurance of which he was the insured. Section 2042(2)[3] would cause the inclusion of the full amount of its proceeds in his gross estate.

To cause the inclusion of the proceeds in Roger's gross estate under section 2042, Roger must, on our facts, have possessed some incident of ownership in the policy at the time of his death. The Oregon Revised Statutes, sec. 112.010, provide that in the event of the simultaneous death of persons, where the devolution of property depends upon priority of death, the property of each person shall be disposed of as if he had survived. We think that Harriet's interest in the policy is "property" to the devolution of which this statute applies. Consequently, we hold that Roger inherited none of the incidents of ownership in the policy from Harriet and that nothing is includable in his gross estate under section 2042. As we understand the positions of the parties, neither party really disagrees with this conclusion.

The Oregon Revised Statutes similarly provide by section 112.040 that where the insured and the beneficiary in a policy of life insurance die simultaneously, the proceeds shall be distributed as if the insured had survived the beneficiary. We hold, by virtue of this provision of Oregon law, Harriet's status as beneficiary will not support the inclusion of these proceeds in Harriet's gross estate under section 2033.

We are not concerned with the "proceeds" of the policy as such; we are only concerned with the "proceeds" insofar as they may provide a measure of the value of Harriet's interest in the policy at the time of her death which occurred simultaneously with the death of her husband, the insured. The question is simply one of valuing Harriet's property interest in the policy for Federal estate tax purposes. As to this question, no presumption of survivorship under the Oregon statutes has any relevance. We have found as a fact in this case that

---

[3] SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. As used in this paragraph, the term "reversionary interest" includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Secretary or his delegate. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate.

Harriet and Roger died simultaneously. Section 2033 causes inclusion in Harriet's estate of the value of her interest in this policy *at the time of her death*. A the exact instant Roger died, the value of the policy ripened into an amount equal to the proceeds that were payable under its terms. Here, this was also the time of Harriet's death. There was no other time at which any other meaningful value could be determined for the purposes of our case.

The regulations provide for the valuation of an insurance policy to determine the amount includable in a decedent's gross estate under section 20.2031–8:

(a) *Valuation of certain life insurance and annuity contracts.* (1) The value of a contract for the payment of an annuity, or an insurance policy on the life of a person other than the decedent, issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts. * * *

(2) As valuation of an insurance policy through sale of comparable contracts is not readily ascertainable when, at the date of the decedent's death, the contract has been in force for some time and further premium payments are to be made, the value may be approximated by adding to the interpolated terminal reserve at the date of the decedent's death the proportionate part of the gross premium last paid before the date of the decedent's death which covers the period extending beyond that date. If, however, because of the unusual nature of the contract such an approximation is not reasonably close to the full value of the contract, this method may not be used.

The Commissioner maintains that petitioner's employment of the method of approximation provided for in the first sentence of the second paragraph of the above quoted regulations is improper under the circumstances of this case. We find that section 20.2031–8(a)(1) states the general rule that fair market value is to be used, and that paragraph (a)(2) is intended only to provide an approximation, in limited circumstances, of the value that would result from the general rule. Under the circumstances of this case, we hold the approximation under paragraph (a)(2) is obviously improper because it results in a valuation that is not consistent with the actual fair market value of the policy at the time of Harriet's death, which under the facts we hold to be an amount equal to the proceeds payable under the policy. As we see it, at the time Harriet died, the policy must be treated as fully matured.

Though not involving the circumstance of simultaneous deaths, this conclusion is supported by the reasoning of analogous cases. See *Estate of James Stuart Pritchard*, 4 T.C. 204, where the value of insurance policies upon his own life, which were assigned by a decedent to his wife, the beneficiary, approximately 30 days before his death from cancer, was in question. There we said, at page 208:

One of the important elements to be considered in determining a value of a life insurance policy is its collectibility. The nearer the insured approaches death,

which is the event of collectibility, the nearer its value approaches the face amount for which it was issued.

And in *Goodman* v. *Commissioner*, 156 F.2d 218, 220 (C.A. 2, 1946), the Second Circuit commented:

It is not easy to conceive of a ready market for matured life insurance policies, but if such a market existed, it is obvious that their price, what they would change hands for between a willing buyer and a willing seller neither acting under compulsion, would be their face value plus post mortem dividends.

We hold the full amount of the $102,389.40 proceeds are includable in Harriet's gross estate. No amount representing the policy or its proceeds is includable in Roger's gross estate.

Reviewed by the Court.

> *Decision will be entered for the petitioner in docket No. 3232–67.*
>
> *Decision will be entered under Rule 50 in docket No. 3233–67.*

---

FAY, *J.*, concurring: The concept of a "willing seller," about to die, bargaining with a "willing buyer," supposedly having full knowledge of the insured's impending demise is difficult to comprehend. Thus, the use of the fair market value approach in this case has, to say the least, an unreal quality. I can conceive of situations where such an approach could present serious problems in future decisions.

Roger and his wife died simultaneously. She possessed all the incidents of ownership in the policy. Consequently at the moment of her death she had the absolute power of disposition over $102,389.40. This, without more, requires the inclusion of that amount in her gross estate under section 2033. The fact that, as a practical matter, she was unable at that moment to exercise that power is immaterial. *Commissioner* v. *Noel Estate*, 380 U.S. 678 (1965).

TANNENWALD, *J.*, agrees with this concurring opinion.