**OLD KENT BANK AND TRUST COMPANY, as Executor of the Estate of Mildred S. Goodwin, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**OLD KENT BANK AND TRUST COMPANY, as Executor of the Estate of Frank T. Goodwin, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

Nos. 19531, 19532.

United States Court of Appeals, Sixth Circuit.

Aug. 7, 1970.

Loring W. Post, Department of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Department of Justice, Washington, D. C., on the brief; Harold D. Beaton, U. S. Atty., of counsel, for appellant.

Roger M. Clark, Grand Rapids, Mich., Warner, Norcross & Judd, Grand Rapids, Mich., on the brief, for appellee.

Before EDWARDS and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

McCREE, Circuit Judge.

These consolidated appeals were taken by the Government from judgments of the District Court in favor of taxpayer, the executor of the estates of Frank and Mildred Goodwin. The case involving the estate of Frank Goodwin is controlled by our resolution of the appeal in the case involving Mrs. Goodwin's estate, and will require only a recomputation based upon the marital deduction.

Mrs. Goodwin's case presents the single but difficult question of the valuation, for federal estate tax purposes, of an insurance policy owned by the wife on the life of the husband, when both husband and wife die simultaneously.

The facts, as stipulated by the parties, are these. Mildred and Frank Goodwin both died in an airplane crash on February 12, 1963. There is no evidence that either of them predeceased the other, and we assume that their deaths were simultaneous. Mrs. Goodwin owned an insurance policy on the life of her husband in the face amount of $60,000. She was the primary beneficiary and their children the contingent beneficiaries under the policy. After the Goodwins' death, the insurance company paid $60,000 to their children. Under the terms of the policy, the children were to receive the proceeds if Mrs. Goodwin did not survive her husband. Also, the Michigan Simultaneous Death Act, Mich.Comp.L. § 720.104, provides that "the proceeds of the policy shall be distributed as if the insured had survived the beneficiary." [1]

Section 2033 of the Internal Revenue Code requires that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Here, both parties agree that the policy was "property" within the meaning of the Code and that Mrs. Goodwin, as owner, had an interest in the policy at the time of her death. The sole dispute concerns the valuation of that interest.

If the Goodwins had not died under these circumstances, there would be little difficulty in valuing the policy. If Mr. Goodwin had died first, the full $60,000, if intact, would have been includable in Mrs. Goodwin's estate on her death. If Mrs. Goodwin had predeceased her husband, the policy would have been valued at $20,470.92—the interpolated terminal reserve. This is the value prescribed by Reg. § 20.2031–8(a)(2) for policies the cash value of which is not readily ascertainable because "the contract has been in force for some time and further premium payments are to be made. * * *"

The District Court held that neither of these valuations properly measured the value of the interest transferred by virtue of Mrs. Goodwin's death. 292 F.Supp. 48 (W.D.Mich.1968). Instead, the court ruled that the policy should be valued at zero. It reasoned that, at the moment of Mr. Goodwin's death, all rights in the policy became vested in the contingent beneficiaries, since Mrs. Goodwin did not survive him, and that no arm's length buyer would have paid anything at that time for the rights of ownership held by Mrs. Goodwin.

We agree that the simultaneous deaths of the Goodwins extinguished Mrs. Goodwin's ownership rights. At this point the rights of the contingent beneficiaries to the proceeds took pre-

---

1. Although state property law governs the devolution of the proceeds, it is not necessarily determinative of federal estate tax liability. Thus the fact that the Simultaneous Death Act treats Mrs. Goodwin as having predeceased her husband is not decisive here. The economic realities, not state property law rules, control. *Cf.* Union Planters Nat'l Bank v. United States, 426 F.2d 115, 118 (6th Cir. 1970).

cedence over any rights the owner may have had, and also terminated the owner's ability to determine the disposition of the proceeds. But we do not agree that the interest transferred (the taxable incident) as a result of Mrs. Goodwin's death was without value.

The federal estate tax is an excise on transfer of interests in property that occur as a result of death. It is obviously easier to value property which does not change in value because of death than property, like an insurance policy, the market value of which is substantially altered at death. Here it is clear that Mrs. Goodwin owned an asset of some value and that that asset was transferred (and altered in value) at the time of her death. We hold that the District Court erred in holding that this interest was valueless for federal estate tax purposes.

The Government argues that the value of the interest to be included in Mrs. Goodwin's estate is $60,000, the face amount of the policy, and the Tax Court has agreed with this contention in similar cases. Estate of Chown, 51 T.C. 140 (1968), rev'd, 428 F.2d 1395 (9th Cir., July 21, 1970); Estate of Wien, 51 T.C. 287 (1968), on appeal to the 5th Circuit; Estate of Meltzer, T.C. Memo. 1970–62 (March 12, 1970). The Government argues: at the moment of death, Mrs. Goodwin owned the policy; at the moment of death the policy matured; the value of a matured policy is the amount of the proceeds, Goodman v. Commissioner of Internal Revenue, 156 F.2d 218, 220 (2d Cir. 1946); accordingly, the amount of the proceeds, $60,000, must be included in Mrs. Goodwin's estate.

The Government's argument implies that there existed an instant at which Mrs. Goodwin's right of ownership and the contingent beneficiaries' right to collect the proceeds coexisted. But as we have seen, as soon as the right to the proceeds accrued, any right of ownership, such as surrendering the policy for its cash value or redesignating the beneficiaries, had terminated. The instant the policy matured, Mrs. Goodwin lost all ownership rights in it. And of course she never had a right in the proceeds herself, since she did not survive her husband, as required by the policy. This analysis equally refutes the District Court's theory, which also assumes a coexistence in time of rights of ownership in Mrs. Goodwin and maturity of the policy. The difference between the two theories is that, in seeking a proper index for valuation, the Government looks at the value of the proceeds accruing to the beneficiaries, while the District Court looked at the value of the rights remaining in Mrs. Goodwin's estate.

Our view is supported by the applicable Regulation. Reg. § 20.2031–8(a) (1) commands that insurance policies be valued at their market replacement value, and Reg. § 20.2031–8(a) (2) prescribes the interpolated terminal reserve (plus proportionate amount of premiums last paid) as the appropriate approximation for policies, such as the one here, in which the contract has been in force for some time and premiums remain due. This latter regulation does not apply when the insurance contract is of an "unusual nature," and the Government contends that it is for that reason inapplicable here. We disagree. In this case, it is the circumstance of simultaneous death which is unusual, not the character of the contract (which, for all that appears, is a perfectly ordinary life insurance policy).

The Government also observes that in Goodman v. Commissioner, *supra* at 219, it was held that a regulation similar to Paragraph (a) (2) was inapplicable, because the condition that "further premiums are to be made" was not met, since no further premiums were due after the insured died. But it seems clear to us that, within the context of the regulation, that language is simply used to indicate a policy which is, at the time of death, not fully paid up. *See* Reg. § 20.2031–8(a) (3), Example (2).

Mrs. Goodwin, then, never owned an interest which was worth $60,000, unless

we assume that the policy appreciated to that value at some time before her death. (Such an assumption requires that we hold Paragraph (a) (1) and not Paragraph (a) (2) to be applicable.) Under this assumption, at the moment Mr. Goodwin's death became inevitable, an arm's length buyer would be willing to pay Mrs. Goodwin $60,000 for ownership of the policy, which would give him the right to control disposition of the $60,000 proceeds.

We think that this argument is unsound. If we take the possibility of such a transaction, however unlikely in fact, into account, see Commissioner of Internal Revenue v. Noel's Estate, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), it is not at all certain that the hypothetical arm's length buyer would be willing to pay $60,000. As the District Court pointed out, there is no showing that such a buyer could depend on the deaths occurring simultaneously. "Will the deaths be treated as simultaneous? Will the decedent die first? Will the insured die first? The value of the policy depends on the answers to these questions—answers which can only be given after death, again making the value of the policy highly speculative. These difficulties in measurement make the application of Regulation [§] 20.-2031–8(a) (2) the fairest way to measure the value of the policy at the moment before death." 292 F.Supp. at 52. In other words, if there is any uncertainty about the economic effect of such a transaction, e. g., as to the tax consequences, the buyer will not pay the full market value. And no court will ever be able to measure, with any assurance of accuracy, the actuarial factors that should attach to these uncertainties.

The policy of § 2033 and Reg. § 20.-2031–8 is to tax insurance policies on the life of another person according to their current market value. In contrast § 2042, which covers policies owned by and on the life of the decedent, requires inclusion of the entire proceeds in the decedent's estate. In the latter case, the death of the owner and the insured necessarily coincide, and the power over the disposition of the policy gives the owner-insured the ability to transfer the amount of the proceeds on his death. But when one owns an insurance policy on the life of another, the expectation is quite different. Only in the unusual case when the owner and the insured die simultaneously does the maturation of the policy coincide with the death of the owner. The owner ordinarily expects either to receive the proceeds, in which case he may dispose of them or adjust his estate plan to them, or to die before the policy is matured, in which case only the market replacement value (or the interpolated terminal reserve, when market value is difficult to ascertain) is taxed in the owner's estate.[2] There is no provision in the Code or in the Regulations for the life expectancy of the insured to be taken into account when the owner of an ordinary life insurance policy dies. *Cf.* United States v. Land, 5 Cir., 303 F.2d 170, 173 n. 4; Reg. § 20.-2031–8(a) (3), Examples (1) and (2). That is in essence what the Government asks us to do here.

The only interest held by the decedent at the time of her death—the ownership rights—is ordinarily taxed according to the interpolated terminal reserve under Reg. § 20.2031–8(a) (2). The result sought by the Government would in effect impose a substantially higher tax on Mrs. Goodwin's estate than ordinarily would be levied because of the tragic coincidence of simultaneous death. The most pertinent Regulation suggests that the interest Mrs. Goodwin had is proper-

2. *See* Note, Estate Tax—Simultaneous Death—Problems of Valuing Decedents' Ownership Interest in Life Insurance Policy, 23 Sw.L.J. 740, 742–743 (1969): "This valuation [the interpolated terminal reserve] is especially attractive because it is the traditional figure used in determining the interest of an owner when he predeceases the insured. Also, it may be accurate since it is the insurance company's estimate of the value of the policy at the moment of the owner-beneficiary's death."

ly measured, not by the proceeds, but by an approximation of the market value of the policy; and we see no reason why this Regulation should not be applied here.

The judgments of the District Court are reversed and the cases remanded for further proceedings in accordance with this opinion.