ESTATE of Harriet H. CHOWN, deceased, Howard B. Somer, Executor, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 24159.

United States Court of Appeals, Ninth Circuit.

July 21, 1970.

As Modified Aug. 27, 1970.

Ray R. Benner (argued), H. Myron Gleason, of Pattullo, Gleason & Hinson, Portland, Or., for petitioner-appellant.

Issie J. Jenkins (argued), Atty., Dept. of Justice, Johnnie Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Janet R. Spragens, Attys., Tax Division, Dept. of Justice, Richard M. Hahn, Acting Chief Counsel, K. Martin Worthy, IRS, Washington, D.C., for respondent-appellee.

Before DUNIWAY, WRIGHT and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

The executor of the Estate of Harriet H. Chown, deceased, seeks review of a decision of the Tax Court, reported at 51 T.C. 140 (1968). We reverse.

The case was submitted to the Tax Court on stipulated facts. Harriet was the absolute owner of an insurance policy on the life of her husband, Roger, which named herself as primary beneficiary and their children as secondary beneficiaries. The policy was purchased by her in 1959, when Roger was 49 and she was 48. On February 25, 1964, Harriet and Roger died in a commercial airline crash near New Orleans, Louisiana, in which all of the passengers were killed. The evidence does not disclose whether death was simultaneous, whether husband or wife died first, or whether one momentarily survived the other.

The Chowns were residents of Oregon, where their wills were probated. The tragedy triggered a double indemnity provision of the policy. The face amount of the policy was $50,000, but an additional $50,000 was payable if death were to result from injury effected through accidental means. The circumstances also brought into play the Oregon "Uniform Simultaneous Death Act," which provides in pertinent part (1 Oregon Revised Statutes):

"112.010. *Disposition of property upon simultaneous death, generally.* Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter.

112.040. *Insured and beneficiary.*

Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary."

The Oregon probate court found, ex parte, that Roger and Harriet died simultaneously. The Tax Court, in this case, expressly found that the deaths were simultaneous.

Under ORS § 112.040, the insurance company paid the proceeds of the policy —$102,389.40, $100,000 plus accrued interest and dividends—to the children as secondary beneficiaries. In preparing Harriet's federal estate tax return, her executor included no part of the proceeds, but did include $8,046.16, representing the interpolated terminal reserve value of the policy, $5,840.40, unearned premiums of $1,078.04 and dividend accumulation of $1,127.72. The Commissioner assessed a deficiency, based upon his determination that the amount of the entire proceeds of the policy should have been included in Harriet's estate as the measure of the value of her ownership interest. The Tax Court upheld the Commissioner.[1]

Neither in the Tax Court nor here did the executor claim that the interpolated terminal reserve value of the policy should not have been included in Harriet's estate for purposes of the estate tax. Under 26 U.S.C. § 6512(b) he could have done so had he wished to, but he *did not*. The *only issue presented* here is the validity of the deficiency assessment.

There are two possible theories upon which it might be claimed that the entire proceeds, or their full value, should be included in Harriet's estate. The first is that the proceeds were payable to her as primary beneficiary. If Roger had indisputably died first, the proceeds would have been payable to her, or, if she died too soon after Roger to receive them, to her estate. They would then have been includible in her estate under 26 U.S.C. § 2033, either as a cash asset if paid to her and still on hand at her death, or, if not yet paid, as the value of her interest in the policy at the time of her death. That value would be easily determined—the full amount that be-

came payable to her as beneficiary before her death.

Here, nothing has been paid to her or her estate. The Tax Court held, and the Commissioner does not now take a contrary position, that by reason of ORS § 112.040 her status as beneficiary will not support inclusion of the proceeds in her estate under 26 U.S.C. § 2033. We agree. Nothing became payable to her as beneficiary by reason of Roger's death.

The second theory, the one adopted by the Tax Court and supported by the Commissioner, is that the value of Harriet's ownership interest in the policy is to be measured, under the unique circumstances of the case, by the value of the full amount of the proceeds that became payable by reason of Roger's death. With this theory we are unable to agree.

In the usual case in which A owns a policy insuring the life of B, and A dies before B, the value of A's interest is determined in the manner used by Harriet's executor in this case. This is provided for in the Treasury regulations, 26 C.F.R. § 20.2031–8(a), which provides:

§ 20.2031–8 *Valuation of certain life insurance and annuity contracts; valuation of shares in an open-end investment company.*

(a) *Valuation of certain life insurance and annuity contracts.*

(1) The value of a contract for the payment of an annuity, or an insurance policy on the life of a person other than the decedent, issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts. * * *

---

1. Two other recent Tax Court decisions have found the full proceeds includible in similar facts. See Estate of Ellen M. Wien, 51 T.C. 287 (1968), on appeal to the Fifth Circuit; Estate of Nathalie Meltzer, T.C. Memo. 1970–62. A Mich- igan District Court has concluded that the proper valuation of the ownership interest in a life insurance policy in these circumstances was zero. See Old Kent Bank & Trust Co. v. United States, 292 F.Supp. 48 (W.D.Mich.1968).

(2) As valuation of an insurance policy through sale of comparable contracts is not readily ascertainable when, at the date of the decedent's death, the contract has been in force for some time and further premium payments are to be made, the value may be approximated by adding to the interpolated terminal reserve at the date of the decedent's death the proportionate part of the gross premium last paid before the date of the decedent's death which covers the period extending beyond that date. If, however, because of the unusual nature of the contract such an approximation is not reasonably close to the full value of the contract, this method may not be used."

It is apparent that the applicable portion of the regulation is subsection (a) (2). The contract had been in force for some time, from August 28, 1959 to February 25, 1964. Further premium payments were to be made; the premium was payable annually during Roger's life, in the sum of $1,984.50 plus $63.50 for the double indemnity feature. There is nothing unusual in the nature of the contract that we can discover. Neither the Commissioner nor the Tax Court suggests that there is. It is not claimed that Roger was in poor health when the policy was issued or when he and Harriet were killed. Presumably, when the policy was issued, the then state of his health and his life expectancy were taken into account in fixing the amount of the premium and thus given effect in determining the amount of the interpolated reserve.

The Tax Court held the regulation inapplicable, not because of the unusual nature of the contract, but because the deaths of Harriet and Roger were, as it found, simultaneous. It stated the proposition in this way:

"We find that 20.2031–8(a) (1) states the general rule that fair market value is to be used, and that paragraph (a) (2) is intended only to provide an approximation, in limited circumstances, of the value that would result from the general rule. Under the circumstances of this case, we hold the approximation under paragraph (a) (2) is obviously improper because it results in a valuation that is not consistent with the actual fair market value of the policy at the time of Harriet's death, which under the facts we hold to be an amount equal to the proceeds payable under the policy. As we see it, at the time Harriet died, the policy must be treated as fully matured." [51 T.C. at 143.]

The primary difficulty with this reasoning is that it must be based upon the assumption that Roger died first; nothing but Roger's death could "fully mature" the policy. And when that happened, Harriet's ownership interest disappeared; her rights to change the beneficiary, surrender the policy, assign it, or borrow on it had vanished. The only conceivable interest that she could have by reason of Roger's death was as beneficiary, but that interest never came to fruition as the Tax Court correctly held.

Yet the Tax Court's reasoning is based upon the proposition that the policy became fully matured at the instant of Roger's and Harriet's deaths, thereby giving to her ownership interest the full value of the proceeds, which, for that fleeting instant, became the fair market value of her ownership interest. The notion that anyone would have paid such an amount, or any amount at all, for that fleeting interest is a bit of metaphysics that we cannot accept. It rests on an assertion that what one at the same instant "acquires" and "loses" one *has* rather than *has not* at that instant:

"At the exact instant Roger died, the value of the policy ripened into an amount equal to the proceeds that were payable under its terms. Here this was also the time of Harriet's death. There was no other time at which any other meaningful value could be determined for the purposes of our case." [51 T.C. at 143.]

We cannot see why that conclusion is required even by the force of untempered abstract reason.

It can be argued just as strongly that, at the exact instant that Roger died, Harriet's ownership interest disappeared, and that therefore the value of her ownership interest, at that instant, was zero.

The Commissioner seeks a way out of this conundrum by urging us to consider what is happening to Harriet's interest in the policy as the plane plummets. In essence, he is suggesting that we should forget about the anomalous consequences of simultaneous death, and look for guidance to what the values of Harriet's interest in the policy would have been if she had died either just before or just after Roger. Those two values are the same, it is argued; so we should ignore the apparent discontinuity at the instant of death.

It is undoubtedly true, as we have pointed out, that had Roger died first the full death benefits would have been included in her estate. But that would not be a result of valuing her ownership interest. It would result because, as beneficiary, she would have become entitled to the proceeds, and they would in fact have been paid to her or to her estate.

However, the value of her interest on the contrary assumption, that she died first, is far less certain. While it is true that the chances of immediate payment of the proceeds, and thus the value of her "incidents of ownership" of the policy, can be said to have been rising rapidly as Roger descended toward earth, it is equally true that Harriet's own chances of ever exercising control over the disposition of those proceeds were falling as fast as she was. Her ability to change the beneficiary on the way down may give her interest some value, but its value is speculative to say the most. Add the least bit of foresight and it is worthless.

Moreover, if we are to forget about instants of time in valuing Harriet's interest in the policy, as the Commissioner

quite reasonably suggests, we should also forget about sufficiently short stretches of time. Here, at least without benefit of hindsight, the period of time during which the value of the ownership interest in the policy was anything other than that assigned to it by the executor was that period between the time something went wrong on the flight and the time of the crash and deaths. Up until that brief and uncertain period of time, during which a fatal crash became possible, then likely, then inevitable, the executor's valuation was the proper one. There is at least as good reason not to focus with tunnel vision on those few moments as there is good reason not to focus in the same way on the peculiar situation at the precise instant of death.

No case has been called to our attention in which the executor's method of valuation was held to be improper because the insured's death was imminent at the time of the death of the owner of the policy. Yet we find it hard to believe that such cases have not occurred. The occurrences of such fatal illnesses as heart attacks, unsuspected but incurable cancer, and many others, followed by a brief period of life, but with early death a virtual certainty, are too frequent for us to think otherwise.

The cases on which the Commissioner and the Tax Court rely do not persuade us. Primary reliance is upon Estate of Pritchard, 1944, 4 T.C. 204. In that case an insured, who owned an insurance policy on his own life, transferred it to his wife at a time within three years of his death. She paid him the cash surrender value of the policy. He was dying of cancer and survived the gift by only 30 days. The gift was thus in contemplation of death, and the Tax Court held that the known near approach of death affected the value of the policy, so that the transfer was not for adequate and full consideration under 26 U.S.C. § 2035. Our case is quite different. There is no showing here that Roger or Harriet had the slightest idea that either was about to die, much less that anyone else did, at least until the plane

began to fall. Such evidence as there is is directly to the contrary.[2] Thus we come back to the period when the plane was falling, a matter that we have already discussed.

Goodman v. Commissioner of Internal Revenue, 2 Cir., 1946, 156 F.2d 218, 220, was a gift-tax case. A wife, who owned life insurance policies insuring her husband's life, placed them in a revocable trust, and named the trust as the beneficiary. The trust was to become irrevocable when the husband died, that is, when the policies matured. That was thus the effective date of the gift. It was held that the value of the proceeds was the value of the gift. The case is analogous to the situation that would have existed had Roger died first, so that Harriet would have been entitled to take as beneficiary. But that is not this case. The death of the *owner* of the policy was not the operative fact, as it is here.

We do not have here a single premium policy, such as was involved in United States v. Ryerson, 1941, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819. That kind of contract is clearly not one defined in 20 C.F.R. § 20.2031–8(a) (2), *supra*, as is the policy in the present case. See also Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813, where the peculiar nature of such contracts is discussed. Neither *Ryerson* nor *Guggenheim* presented a comparable problem to that presented here.

It does not add anything to the solution of the problem to treat Harriet's ownership as if it were a power of appointment under 26 U.S.C. § 2041. In the first place, we are dealing with ownership, not a mere power. Had Roger survived her the policy would have been an asset of her estate and passed under her will. In the second place, if we were to consider her interest as a power of appointment because she could name

herself, her creditors, her estate, or the creditors of her estate, as beneficiary or beneficiaries, that does not solve the problem of how to value her interest. The normal method of doing that is set out in the Treasury regulations, § 20.-2031–8(a), *supra,* and the only real question that remains is whether that method should be departed from here.

Commissioner of Internal Revenue v. Estate of Noel, 1965, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159, involved the incidents of ownership of a policy taken out by the insured on his own life just before boarding a plane, and physically delivered by him to his wife. He was killed in a crash of the plane as the Chowns were. It was contended that his incidents of ownership were meaningless, because he could not in fact have exercised them while in flight. In reply, the Supreme Court said:

> "It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day-by-day, hour-by-hour capacity to dispose of property which he owns. We hold that estate tax liability for policies 'with respect to which the decedent possessed at his death any of the incidents of ownership' depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment."

There, it was claimed that the incidents of ownership should have been disregarded. Here it is claimed that they should be given a special valuation because of Harriet's theoretical ability to sell her interest at a time when, by accident, it appeared certain that Roger was about to die. But we think that the principle announced by the Court is equally applicable to her interest. We conclude that the executor properly applied Regulation 20.2031–8(a) (2), *su-*

---

**2.** A verified petition, filed by the executor with the Oregon Probate Court, recites that Harriet "was in good mental and physical health" and "had every reason to return home" when she and Roger left him in Mexico City to take the plane that ultimately crashed. There is nothing in the record about Roger's health.

*pra,* to value Harriet's ownership interest in the policy.

Insofar as it sustains the deficiency here in question, the judgment of the Tax Court is reversed, and the case is remanded to that Court for further proceedings consistent with this opinion.