ESTATE OF LILLIAN GOLDSTONE, DECEASED, SIDNEY GOLDSTONE, EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8310–78, 8460–78.[1] Filed June 28, 1982.

---

[1]These cases were consolidated for purposes of trial, briefing, and opinion.

*Joel Yonover* and *Stuart J. Friedman,* for the petitioner.
*Tommy F. Thompson,* for the respondent.

OPINION

WILBUR, *Judge*: Respondent determined a deficiency in petitioner's Federal gift tax for the calendar quarter ended March 31, 1974, in the amount of $9,599.72. Respondent further determined a deficiency in petitioner's Federal estate tax in the amount of $48,087.52. By way of amended answer, respondent claimed an increase of $8,493.46 in the proposed Federal estate tax deficiency, making the overall estate tax deficiency $56,580.98.

The following issues are presented here for our decision.

(1) Whether Lillian Goldstone, who was killed with her husband in an airplane accident, made a taxable gift of one-half of the proceeds of two life insurance policies she owned on the life of her husband, since she is presumed to survive him under the Uniform Simultaneous Death Act.

(2) Whether one-half of the proceeds of the two policies, made payable to a trust in which Lillian Goldstone retained a life estate for the theoretical instant of her survival, are also includable in her gross estate pursuant to section 2036.[2]

---

[2]All references are to the Internal Revenue Code of 1954 as amended. In an amended answer, respondent also claimed an increased deficiency due to a computational error.

These cases have been submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference. A brief review of the salient facts is set forth below.

Lillian Goldstone (Lillian), her husband Arthur Goldstone (Arthur), and their three minor children, Debra, Mark, and Gerald, all died in the crash of a private airplane on March 24, 1974. Given the circumstances, there was not sufficient evidence to establish that Lillian and Arthur died other than simultaneously. The parties have therefore stipulated that pursuant to applicable State law, Lillian is presumed to have survived her husband.[3] Sidney Goldstone, a resident of Munster, Ind., was appointed executor of Lillian's estate.

On May 21, 1965, Arthur established an insurance trust captioned Life Insurance Trust for Arthur Goldstone, Trust Number P–3900 (hereinafter referred to as the insurance trust). After Arthur's death, the trustee was directed to divide the trust property (including any property devised by Arthur to the trustee and any proceeds of insurance on Arthur's life received by the trustee), into two separate funds. Each fund was to be held in a separate trust, denominated respectively trust "A" and trust "B."

Trust A, described in article IV of the agreement, was designed to serve as a classic marital deduction trust. It was to consist of a proportionate share of the total trust property as determined pursuant to a modified fractional share formula.[4]

Concerning the distribution of trust A, the trustee was instructed to pay all of the net income to Lillian during her

---

Petitioner concedes the evidentiary facts underlying the computational error, and does not really contest the matter on the merits in its briefs. Indeed, it would be difficult to imagine what petitioner might have said had it addressed the matter. Accordingly, we decide this issue for respondent.

[3] The applicable statutes are set out at note 9 *infra*.

[4] The "formula" consists of a fraction which, when applied against the total trust property, is designed to yield the amount to be allocated to the marital trust. The primary purposes of such formulae are to maximize the available marital deduction by taking into account property passing to the surviving spouse outside the will, as well as to minimize the effect of changes in valuation during the administration of the estate.

lifetime, provided she survived Arthur, commencing with the date of Arthur's death.[5] Lillian was given an unlimited power to invade the principal at any time and for any reason. Lillian was additionally given a special power to appoint up to $3,000 per year to each of Arthur's children or lineal descendants. Finally, Lillian was given a general power exercisable by will by Lillian alone and in all events, to appoint the remaining income and principal to whomever she so desired. Upon failure to exercise this power (or upon disclaimer of any portion of trust A), the residue was to pour over into trust B.

Trust B, described in article V, consists of all of the remaining trust property not allocated under the formula to trust A, as well as any interest in trust A which Lillian failed to appoint at her death or which she disclaimed. Generally, all of the net income of trust B was to be paid to Lillian, except that the trustee, in its discretion, could withhold from her so much of the income as the trustee determined not to be required for her reasonable support, maintenance, and welfare, considering all of Lillian's known income from all other sources. The trustee was authorized, at its discretion, to pay to one or more of Arthur's children so much of any withheld current income as the trustees determined to be desirable for their reasonable use, support, maintenance, and welfare, or for any other purpose believed to be in the child's or children's best interest. Any undistributed income was to be added to principal at the trustee's discretion.

After all of the principal of trust A was exhausted, Lillian was to have the right (noncumulative) to demand from trust B, up to $5,000 or 5 percent of the principal annually, whichever was larger. Lillian's right to income and principal from Trust B continued only as long as she remained Arthur's unmarried widow. In the event of her remarriage, her rights were to cease, and all affected interests were to be treated as if she had died.

Article VI gave the trustee the power to invade principal under certain circumstances. If, in the opinion of the trustee, the income payable to Lillian from all sources (including her

---

[5]The agreement specifically provides that in determining whether Arthur's wife survived him, if the order of their deaths cannot be established by proof, his wife shall be deemed to have been the survivor.

power to invade the principal) was not sufficient for her reasonable health, maintenance, welfare, and support, or in the event of her physical or mental disability, the trustee was empowered, in its discretion, to apply as much of the principal of either trust A or trust B as the trustee determined to be necessary for those purposes. The trustee was required to exhaust the principal of trust A before invading trust B.

A similar provision allowed the trustee to invade the principal of trust B, at the trustee's discretion, for the benefit of Arthur's children, when the child's or children's overall income, in the trustee's opinion, was insufficient for the reasonable support of the child (and the child's family). The trustee was additionally authorized to invade the corpus of trust A before liquidating trust B for the benefit of the children to the extent that Lillian was required to provide and furnish funds for these purposes, unless to do so would deny the maximum marital deduction.[6]

Lillian made her last will and testament on March 14, 1966. She devised her residuary estate, specifically excluding any property over which she might possess a power of appointment, to Arthur in the event he survived her, and if he did not, it was to pass to the Gary National Bank as trustee under the aforementioned life insurance trust agreement to be commingled with the property of that trust and held, managed, or distributed in accordance with the provisions of that agreement.

Article X of the will concerned survivorship. It provided:

> If my husband and I shall die simultaneously, or under circumstances which make it difficult to determine which of us died first, or if the order of our deaths cannot be established by proof, I direct that I shall be deemed to have survived for the purposes of this Will and I direct further that the provisions of this Will shall be construed upon that assumption, irrespective of any provisions of law establishing a contrary presumption or requiring survivorship for a fixed period as a condition for taking property by inheritance.

At the time of her death, Lillian owned two life insurance policies on the life of her husband. Pursuant to these owner-

---

[6]Additionally, the trust instrument included a series of provisions, not here relevant, specifying the interests taken by various successive beneficiaries and indicating the circumstances (including the simultaneous death of prior beneficiaries) giving rise to these interests.

ship rights, she had the right to change the beneficiary, until Arthur's death when the proceeds of these policies became "irrevocably payable" pursuant to her designation of the beneficiary.[7]

Upon Arthur's death, one-half of the proceeds of each of the policies was payable to trust A and one-half of the proceeds of each of the policies was payable to trust B. Although a total of $101,784.44 was payable to each trust, the dispute before us relates only to the proceeds payable to trust B. In this connection, respondent sent petitioner two deficiency notices. The first asserts a gift tax deficiency on the theory that since Mrs. Goldstone is presumed to survive her husband, she made a taxable gift of the policy proceeds to trust B when her husband predeceased her by a theoretical instant. The second includes the proceeds in Mrs. Goldstone's estate under section 2036, since the inter vivos gift was to a trust in which Mrs. Goldstone retained a life estate for the theoretical instant of her survival.[8]

We confront still another dispute involving the appropriate transfer tax consequences attending the tragic death of a married couple under circumstances making it impossible to establish the priority of death. The Uniform Simultaneous Death Act, adopted in 46 states and the District of Columbia, provides presumptions as to the priority of death applicable in these circumstances. Where the devolution of property depends on the priority of death, the act provides that the property of each person shall be disposed of as if he or she had survived. However, under a provision made specifically applicable to the payment of insurance proceeds, an insured is presumed to survive the beneficiary.[9]

---

[7]The parties quarrel in one instance about whether the awkward term "irrevocably payable" is the correct phrase, but it is clear from the assumptions they have made, their requested findings of fact, and the legal arguments they did and did not make, that Arthur's death was the event terminating Lillian's ability to provide for an alternative disposition of the proceeds.

[8]Respondent also asserted that the gift was in contemplation of death, but no longer pursues that argument.

[9]Lillian Goldstone was domiciled in Indiana at her death. Indiana has adopted the Uniform Simultaneous Death Act. The applicable presumptions under Indiana law read:

"29-2-14-1 [6-251]. Simultaneous death—Survivorship—Evidence—Descent of Property.—Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneous-

In *Estate of Chown v. Commissioner*, 51 T.C. 140 (1968), revd. 428 F.2d 1395 (9th Cir. 1970) (followed in *Estate of Wien v. Commissioner*, 51 T.C. 287 (1966), revd. 441 F.2d 32 (5th Cir. 1971), and *Estate of Meltzer v. Commissioner*, T.C. Memo. 1970–62, revd. 439 F.2d 798 (4th Cir. 1971)), a married couple perished in a plane crash under circumstances making it impossible to establish the priority of death. Harriet Chown owned and was the primary beneficiary of an insurance policy on her husband's life. In sustaining respondent's determination that the proceeds of the policy were includable in her estate, we analyzed both of these presumptions included in the Uniform Simultaneous Death Act.

As to the presumption that the insured survives the beneficiary, we stated (51 T.C. at 142):

> The Oregon Revised Statutes similarly provide by section 112.040 that where the insured and the beneficiary in a policy of life insurance die simultaneously, the proceeds shall be distributed as if the insured had survived the beneficiary. We hold, by virtue of this provision of Oregon law, Harriet's status as beneficiary will not support the inclusion of these proceeds in Harriet's gross estate under section 2033.

Concerning the presumption involving devolution of a decedent's property, we stated (51 T.C. at 142):

> The Oregon Revised Statutes, sec. 112.010, provide that in the event of the simultaneous death of persons, where the devolution of property depends upon priority of death, the property of each person shall be disposed of as if he had survived. We think that Harriet's interest in the policy is "property" to the devolution of which this statute applies. [10]

Recognizing that Mrs. Chown owned the policy at her death, we focused on the proceeds of the policy "insofar as they may provide a measure of value of Harriet's interest in the policy at the time of her death which occurred simultaneously with the

---

ly, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this act. [29–2–14–1—29–2–14–8]. [Acts 1941, ch. 49, § 1, p. 132.]" [Ind. Code Ann. sec. 29–2–14–1 (Burns 1975).]

"29–2–14–4 [6–254]. Insurance policies—Simultaneous death of insured and beneficiary—Distribution of proceeds.—Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary. [Acts 1941, ch. 49, § 4, p. 132.]" [Ind. Code Ann. sec. 29–2–14–4 (Burns 1975).]

[10]For this reason, we rejected respondent's alternative argument that Roger Chown inherited ownership of the policy from Harriet, requiring inclusion of the proceeds in his estate under sec. 2042, when he died a theoretical moment later.

death of her husband, the insured." 51 T.C. at 142. We gave the following reasons for holding that at the time Harriet died, the policy must be treated as fully matured:

The question is simply one of valuing Harriet's property interest in the policy for Federal estate tax purposes. As to this question, *no presumption of survivorship under the Oregon statutes has any relevance.* We have found as a fact in this case that Harriet and Roger died simultaneously. Section 2033 causes inclusion in Harriet's estate of the value of her interest in this policy *at the time of her death.* At the exact instant Roger died, the value of the policy ripened into an amount equal to the proceeds that were payable under its terms. Here, this was also the time of Harriet's death. There was no other time at which any other meaningful value could be determined for the purposes of our case. [51 T.C. 142, 143; emphasis in original and added.]

Our holding that "no presumption of survivorship under the Oregon statutes has any relevance" was fortified by our reliance on *Goodman v. Commissioner,* 156 F.2d 218 (2d Cir. 1946), affg. 4 T.C. 191 (1944). In *Goodman,* the proceeds of a policy owned by a surviving wife on the life of her husband became irrevocably payable to a trust at the husband's death. The Second Circuit agreed with us that the wife made a gift at the instant of her husband's death equal to the policy proceeds plus post mortem dividends.

In the case before us, the wife was not a beneficiary of the policy, and the parties have accordingly stipulated that under applicable State law, she is presumed to have survived her husband. If we follow our decision in *Estate of Chown,* "no presumption of survivorship under the [Indiana] statutes has any relevance," and the policies in issue matured at the time of Lillian's death, which was also the time of Arthur's death. There would be "no other time at which a meaningful value could be determined," and "the policy would be treated as fully matured." *Estate of Chown v. Commissioner, supra* at 142, 143.

However, four Circuit Courts of Appeals have now held that a mechanical application of the applicable presumptions is dispositive of the Federal transfer taxes arising in cases of simultaneous death. These cases hold that since an insured is presumed to survive an owner-beneficiary, at the death of the latter, he or she owns only an interest in an unmatured insurance policy, includable in the owner's estate at its interpolated terminal reserve value under section 20.2031–

8(a)(2), Estate Tax Regs. *Estate of Chown v. Commissioner, supra; Old Kent Bank & Trust Co. v. United States,* 430 F.2d 392 (6th Cir. 1970), revg. 292 F. Supp. 48 (W.D. Mich. 1968); *Estate of Wien v. Commissioner, supra; Estate of Melzer v. Commissioner,* 439 F.2d 798 (4th Cir. 1971), revg. a Memorandum Opinion of this Court. Respondent has now acquiesced in these decisions, and indeed extended their rationale. See Rev. Rul. 77–181, 1977–1 C.B. 272.

If extended analysis would yield a perfect answer, we would long ago have discovered it. There are theoretical problems with any of the myriad solutions that logic provides. The tragic circumstances of simultaneous death call not for more metaphysics, but for a clear answer. Certainly, there are no planning possibilities in any rule that is adopted. We therefore overrule our prior decisions in *Chown* and *Wien,* and in the future will follow the mechanical rule embraced by the Courts of Appeals decisions cited above.

A mechanical application of the presumptions in this case results in the application of a gift tax on the policy proceeds. The parties have stipulated that, under applicable State law, Mrs. Goldstone survived her husband. Viewed in this light, the case is governed by *Goodman v. Commissioner, supra,* and Mrs. Goldstone made an inter vivos gift of the matured policy at her husband's death—a gift equal to the face value of the policy plus post mortem dividends.[11] Respondent has characterized the transaction in this manner and it will be sufficient to stop here for cases arising after 1976 when a unified transfer tax system was enacted. For under the unified transfer tax there will be one transfer tax imposed at the unified rates, whether the transfer is viewed as occurring inter vivos or at death.

We deal here with what is undoubtedly the last case of this kind under the pre–1976 law, and a gift tax on the proceeds

---

[11]Admittedly, this produces inconsistent results. When, as here, the decedent is not a beneficiary of the policy, she is presumed to survive and has made a gift to the trust of the face value of the policies. If she were a primary beneficiary, and the trust the secondary beneficiary, she would be presumed to predecease the insured, and an estate tax would then be due on the interpolated terminal reserve. This disparity is odd, for in both cases the property goes to the same beneficiary. But as Emerson advised us, a foolish consistency is the hobgoblin of little minds. And, in any event, without legislation, consistency is hardly obtainable here and must yield to the need for certainty.

does not satisfy respondent who, in his anxiety to also collect an estate tax, has carried the mechanical argument to its logical extreme and a little beyond. Respondent argues that Mrs. Goldstone possessed, during the theoretical instant of her survival, the right to the income from the trust for "life." Having made an "inter vivos" transfer with a retained "life estate," the policy proceeds transferred are includable in her estate under section 2036.[12]

The parties have diametrically opposed views concerning the nature of any "life estate," and convenience and symmetry suggest that we pause to focus on these differences. Petitioner argues that, if the retained life estate is of significance herein, its value must be deducted from the property transferred in computing the gift tax. (See sec. 25.2512–9(a)(1), Gift Tax Regs., providing that "the value of the gift is the value of the property transferred less the value of the donor's retained interest.") Respondent agrees in principle, but with uncharacteristic realism argues that since Mrs. Goldstone survived for only a "theoretical instant," the valuation of her life estate "does not lend itself to a mere mechanical application of actuarial factors." See Rev. Rul. 77–48, 1977–1 C.B. 292, 294. For this, respondent relies on still another simultaneous death case, *Estate of Lion v. Commissioner*, 438 F.2d 56 (4th Cir. 1971), affg. 52 T.C. 601 (1969), which denied a credit under section 2013 to the wife's estate for taxes on a prior transfer of property (a life estate) by the husband who was presumed to die first. The court held that any life interest received by the transferee terminated moments after it vested, if it did vest, and was properly determined to be zero. The case clearly holds that any life estate that may have vested a theoretical split second before the death of the "surviving" wife was valueless.

---

[12]SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

We therefore agree with respondent that any retained life estate is properly described by a zero and should not be deducted from the gift Mrs. Goldstone made.

Unfortunately, respondent's summer romance with realism fades with the fall foliage. For as we noted above, he contends that this zero life estate, of no consequence for the gift tax, is sufficient to require inclusion of the entire proceeds in Mrs. Goldstone's estate under section 2036.

We disagree. Respondent observes in his published position on this issue, that Mrs. Goldstone is "presumed" to survive her husband by a "theoretical" instant (see Rev. Rul. 77–48, 1977–1 C.B. 292, 293), an infinitesimal fraction of a millisecond, immeasurable even with the assistance of an atomic clock. But it is not the infinitely abbreviated length of the interval that is important—but its "theoretical" nature. For the presumptions before us are legal constructs, designed to pass each decedent's property in accordance with his or her presumed wishes. Whether it is a will or an insurance policy, a spouse is made the primary beneficiary on the assumption that he or she will be the surviving spouse. When both spouses unexpectedly die at the same instant, the presumptions simply operate as a rule of substantive law to pass the property to secondary beneficiaries. *In re Estate of Moran*, 77 Ill. 2d 147, 395 N.E.2d 579 (1979).

Under the mechanical application of this presumption followed by the Courts of Appeals and adopted by this Court today, the presumptions answer the question who takes what and when in the event of simultaneous *death*. The act is concerned with simultaneous *death* and the survivors of the *decedents*; it is wholly foreign to the purpose and structure of the act to assume one of the *decedents* takes a "life" estate at *death*. The notion that when two people simultaneously die, one takes a life estate at death from the other extends logic far beyond the substance of what has transpired. Certainly, what has transpired is not even remotely connected with the evil Congress contemplated when it dealt with the generic problem of transfers taking effect at death, or with the specific aspect of that problem addressed in section 2036 (transfers with a retained *life* estate). The case before us is sui generis, but nevertheless, we believe the result and rationale of *Estate of*

*Lion v. Commissioner, supra,* support the conclusion we have reached.[13]

> *Decision will be entered under Rule 155 in docket No. 8310–78.*

> *Decision will be entered for the petitioner in docket No. 8460–78.*

Reviewed by the Court.

---

[13]Respondent argues that if an instantaneous life estate is ignored for the purposes of sec. 2036, then the life insurance proceeds passed from Lillian Goldstone at the instant of her death, and they are therefore includable in her gross estate under sec. 2033. But this is simply a restatement of our ruling in *Estate of Chown v. Commissioner,* 428 F.2d 1395 (9th Cir. 1970), revg. 51 T.C. 140 (1968), now rejected in four circuits (with respondent's acquiescence) and abandoned by this Court in this opinion. Accordingly, sec. 2033 does not help respondent.

