## COMMISSIONER OF INTERNAL REVENUE v. EDWARDS.

### No. 8183.

Circuit Court of Appeals, Seventh Circuit.

May 13, 1943.

J. P. Wenchel and Ralph F. Staubly, Bureau of Internal Revenue, both of Washington, D. C., and Samuel O. Clark, Jr., Sewall Key, and L. W. Post, Sp. Asst. Attys. Gen., for petitioner.

Kenneth M. Fiske, Metellus Thomson, Jr., and John H. Letsinger, all of Chicago, Ill., for respondent.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks to reverse the Tax Court's determination of the value of eight annuity contracts, at the time respondent transferred them by gift. The policies were issued in 1934 and 1935; the gifts executed June 11, 1936. Respondent reported the transaction, and the commissioner, believing the value placed upon the contracts too low, increased it and levied a deficiency gift tax. Upon review, the court fixed the value upon the basis of the "interpolated terminal reserve at the date of the gift." Petitioner contends that the value should have been ascertained by determination of the value of comparable contracts. But the court found that no comparable contracts were in existence, and our question is whether, upon the record presented, this conclusion is right.

Section 506 of Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 1005, in substance, provides that if a gift is made in property, the value of the asset at the time of its transfer shall be the amount of the gift. Treasury Regulation 79 provides that the value of annuity contracts shall be determined from the purchase price of the particular policies or from that of comparable contracts, and that, if valuation arrived at through consideration of the cost of comparable contracts is not readily ascertainable, when a donated policy has been in force for some time, its value may be approximated, unless such approximation is not reasonably near the full valuation, upon the basis of the "interpolated terminal reserve at the date of the gift."

Inasmuch as these contracts had been in force for a substantial period, their value could not be determined by reference to their cost. Subsequent to their issuance and prior to the time of the gift, the basis of insurance annuity contracts had been so modified that it was possible to secure them only at a greater cost. Thus the Prudential, which issued these contracts, increased its rates for single premium annuity policies from the previously prevailing 3¾ per cent interest rate and 4½ per cent loading charge basis to a 3 per cent interest rate and 6½ per cent loading charge basis.

The commissioner originally took the position that, though identical agreements could not be secured, comparable contracts might have been purchased and would have cost $222,851.62. But it was apparent that the guaranteed refund benefits under the policies transferred by respondent amounted to only $179,235.08 whereas the same benefits in the contracts suggested by commissioner as comparable, totalled $222,851.62 and that the commutation rights in the contracts disposed of were worth only $162,235.10 while similar rights in the allegedly comparable contracts totalled $189,984.64. Confronted by this discrepancy, the commissioner withdrew the values which he had set up as a basis for the deficiency assessment and attempted to em-

body a formulated mathematical calculation in a hypothetical contract and thus supply the apparent lack of comparable features in the contracts involved and in those with which he had originally compared them. The ultimate effect of his calculation was to set up contracts having a supposed purchase price of $218,061.28 and a guaranteed refund of $179,235.08. This resulted in lack of a refund annuity. The commissioner's method of valuation failed to include any consideration of commutation and surrender rights. The evidence is that the difference in the commutation and surrender rights of the contracts involved and those of the contracts proposed by the commissioner was approximately $28,000 on the date of the gift. There is no evidence that any policy of the type he suggested has ever been offered or sold.

The commissioner asserts lack of significance in his failure to consider commutation and surrender rights in determining values of annuity contracts. To accept his premise is to leave out of account the fact that liquid money, readily accessible, is worth more than that which can not be reached. The right to immediate enjoyment of cash is not without value. Cash surrender and commutation rights tend to liquify the money held by insurance companies under annuity contracts, for, by virtue of these rights, that money becomes a valuable asset readily accessible to the owner. Insurance companies, therefore, place higher cost prices on contracts including such rights than upon those having no or lower surrender and commutation values. This they are impelled to do by the fact that they must maintain liquid assets available to satisfy demands based upon these rights.

Furthermore the assumed contracts suggested as comparable by the commissioner gave no consideration to the fact that two of the policies involved contained cash surrender rights which required complete cancellation of the contract upon the payment of a lump sum to the owner, while those suggested by the commissioner for comparison include commutation rights which permit the holder to resume the benefits after expiration of the guaranteed refund period. Obviously the value of any policy is increased by inclusion of such a privilege.

"All of the economic benefits of a policy must be taken into consideration in determining its value for gift-tax purposes. To single out one and to disregard the others is in effect to substitute a different property interest for the one which was the subject of the gift." Guggenheim v. Rasquin, 312 U.S. 254, 257, 61 S.Ct. 507, 509, 85 L.Ed. 813. Inasmuch as it appears from the evidence that various substantial rights and economic benefits were included in the policies suggested by the commissioner for comparison, which were not embraced in the contracts transferred, we think the court rightfully concluded that the factors of the allegedly "procurable contracts differentiate them unmistakably from the contracts under consideration." The value could not be established by consideration of comparable contracts for the simple reason that no comparable contract was procurable.

The court rightfully proceeded to approximate the value in accord with the Treasury Regulation upon the basis of the interpolated terminal reserve at the date of the gift. This is not cash surrender value; it is the reserve which the insurance company enters on its books against its liability on the contracts. It is, in fact, the insurer's valuation of the contract. The word "interpolated" simply indicates adjustment of the reserve to the specific date in question. The court found that the interpolated terminal reserve of the eight annuity contracts aggregated $182,653.56 and that this sum represented the gross charge "for annuity certain, plus the gross charge for deferred annuity, minus the loading charge of 4½ per cent." Upon this basis, in accord with the pertinent regulation, the court rightly fixed the value of the contracts for gift purposes.

The judgment is affirmed.