52 So.2d 893 (1951)
MIAMI BEACH FIRST NAT. BANK et al.
v.
MIAMI BEACH FIRST NAT. BANK et al.
Supreme Court of Florida, Special Division B.
May 22, 1951.
Rehearing Denied June 28, 1951.
Copeland, Therrel & Baisden, Miami Beach, for appellants.
Mitchell D. Price, Zaring & Florence and Jerome G. Greene, Miami, for appellees.
TERRELL, Justice.
This suit was instituted by bill of complaint on the part of Miami Beach First National Bank as executor of the last will and testament of Eugenie E. Goldsmith for the purpose of securing a construction of Article 15 of the will of George M. Graham. Miami Beach First National Bank as trustee under the last will and testament of George M. Graham, including the beneficiaries under his will, were named defendants. The defendants moved to dismiss the bill of complaint. The plaintiff moved for final decree on the issues made by the bill and the several answers of defendants. The chancellor overruled the motion to dismiss and found that the estate of Eugenie E. Goldsmith was entitled to take an equal share of the trust estate with the other beneficiaries named in the Graham will. The defendants appealed.
*894 It appears from the bill of complaint that George M. Graham died a resident of Dade County, November 16, 1944, leaving a last will and testament with codicil thereto which was duly probated in Dade County, November 20, 1944. Article 15 of said will is as follows:
"All the residue and remainder of my estate of whatever kind and wherever located, I hereby devise and bequeath to my trustees hereinafter named and provided for, to be held, owned, managed and disposed of by them, In Trust Neverthless, for the purposes, upon the conditions and with the powers hereinafter set forth as follows, to-wit:
"(2) I direct that all of the net income to be derived from the said trust estate shall be paid to my wife, Perla N. Graham, so long as she shall live, the payments to be made from time to time as is reasonably convenient, with due regard to the needs of my wife and the manner of accrual of the income, but in any event as often as annually, and that at the time of the death of my wife, the corpus of the said residuary trust estate shall be divided into as many parts or shares as I may have sisters (including my said sister-in-law) then living, and neices and nephews then living (all of such sisters, neices and nephews to constitute a class) and to each shall be given one such part or share. If any of this class of beneficiaries should be dead and leave direct descendants who are not themselves included in this class, then such descendants shall receive the share of such deceased ancestor beneficiary; otherwise the number of shares shall be reduced by the number of the class deceased at the time of the death of my said wife or widow.
"(b) At the time of the death of my wife, full and complete distribution shall be made by my trustees, in accordance with the provisions hereof, irrespective of whether or not any of the beneficiaries may at that time be minors; in that event distribution shall be made to the guardian or some other person authorized in law to receive the benefit in behalf of said minor or minors."
The bill of complaint alleges that on the 27th of September, 1949, Perla N. Graham, the wife and life tenant under said will and Eugenie E. Goldsmith, sister-in-law of the testator and one of the remaindermen named in Article 15, died in a common disaster, there being no satisfactory evidence that they died other than simultaneously. The bill also alleges that Eugenie E. Goldsmith left a last will and testament which was admitted to probate in Dade County, October 6, 1949, that letters testamentary were issued to Miami Beach First National Bank which is now the executor under said will. The bill then alleges that the corpus of the estate should be distributed and that a controversy has arisen as to whether or not the estate of Eugenie E. Goldsmith should receive a share of the trust estate created by the Graham will. The bill prays that the court inquire into the subject and declare the rights of the parties.
The question for decision may be stated as follows: Article 15 of the will of George M. Graham set up a testamentary trust providing that the income be paid to his wife, Perla M. Graham for life and upon her death the corpus of the trust be divided among certain remaindermen as a class, who survive the life tenant. The class included Eugenie E. Goldsmith who died with the life tenant in a common disaster, there being no proof that they died other than simultaneously. Under this state of facts, is the estate of Eugenie E. Goldsmith entitled to share equally with the other remaindermen in the distribution of the Graham trust?
The appellants contend that under Article 15, as quoted above, Eugenie E. Goldsmith had a contingent remainder in the Graham trust, the contingency being that she survive the life tenant, Perla N. Graham, that in order for her remainder to vest she must survive Mrs. Graham and that if she and Mrs. Graham died simultaneously in a common disaster, no part of the trust estate vested in Eugenie E. Goldsmith, and being so, her estate has no claim to any portion of the Graham trust.
Appellees contend on the other hand that Chapter 22783, Acts of 1945, commonly known as the Uniform Simultaneous Death Law, Section 736.05(2), F.S.A. controls *895 the disposition of the Graham trust under which they contend that the estate of Eugenie E. Goldsmith is entitled to share equally with the other remaindermen in its distribution.
Section 736.05(2), F.S.A. is as follows: "(2) Where two or more beneficiaries are designated to take successively by reason of survivorship under another person's disposition of property and there is no sufficient evidence that these beneficiaries have died otherwise than simultaneously, the property thus disposed of shall be divided into as many equal portions as there are successive beneficiaries, and these portions shall be distributed respectively to those who would have taken in the event that each designated beneficiary had survived."
It is suggested that the answer to the question presented involved the interpretation of both Sections 731.26 and 736.05, F.S.A. but there is no merit to this contention. Section 731.26, F.S.A. appears to have been superseded by paragraph (1), Section 736.05, which deals with another phase of the subject and has no application to this case. We think Section 736.05(2), F.S.A. concludes the question presented here.
Simultaneous death statutes are modern innovations actuated from lack of any logical or realistic method to resolve the legal difficulties that arise in the distribution of estates when two or more people in line of succession to them, are killed in a common disaster and there is no satisfactory evidence as to the order in which they died. Such disasters frequently occur from airplane, motor car, fast train and other methods of rapid transit, the result being that estates are dislocated, trusts are disturbed and the law of descents is shunted off the regular course.
To direct the devolution of estates before the advent of the simultaneous death statutes, some states applied common law rule which indulges no presumption as to who survived last in a common disaster but rested the question with those claiming an interest to establish survivorship, which was often impossible to do. Some states set up arbitrary presumptions to determine survivorship and thus direct the distribution of property, but these proved to be very unsatisfactory. In other states those clothed with the power to administer estates under such circumstances are left to their own wits to determine survivorship, but the result of these determinations were even more uncertain, inequitable and unsatisfactory. All these factors had a part in activating the Simultaneous Death Laws.
Section 736.05(2), F.S.A. was designed to remedy this situation and we think it determines the case at bar. Mrs. Graham, the life tenant, and Eugenie E. Goldsmith, one of the remaindermen, were killed in an airplane accident and there is no convincing evidence as to the order in which their deaths occurred. Both were named beneficiaries in the will of George M. Graham, Mrs. Graham as a life tenant and Eugenie E. Goldsmith as remainderman. There were other remaindermen not necessary to mention but there is no showing whatever that Eugenie E. Goldsmith survived Mrs. Graham which was the necessary condition precedent that she or her estate take from the Graham trust. When this is the case, the statute intervenes and requires that the property be "divided into as many equal portions as there are successive beneficiaries, and these portions shall be distributed respectively to those who would have taken in the event that each designated beneficiary had survived."
Appellants contend that the statute should not rule the disposition of the Graham trust because Mrs. Graham had a life estate while Miss Goldsmith was a remainderman, that a remainder and a life estate are unequal and that upon the simultaneous death of a life tenant and a remainderman it would be inequitable to distribute half the property to the devisees of a life tenant. The answer to this question is that the statute makes no such distinction. Mrs. Graham and Miss Goldsmith were both beneficiaries and the statute applies when there are two or more beneficiaries to take successively and there *896 is no evidence that they died otherwise than simultaneously. The statute disregards split second survivorships and takes no account of the order in which the victims died. It establishes a rule of succession that has no relation to either and states the law of descent under such circumstances.
The Simultaneous Death Law discards the idea of proving survivorship and proceeds on the presumption that each person is the survivor as to the property alloted to him and administers the estate accordingly. The act not only attempts to clarify the common law rule but in cases where two or more die in a common disaster and the order of death is uncertain, it eliminates the inequalities and uncertainties of the common law, and the arbitrary presumptions to guide property successions where they exist. It not only eliminates the uncertainties of descent in such cases, but it provides for an equitable disposition of estates. Certainly it amounts to a new rule for property succession but no one challenges the power of the legislature to provide it. It abrogates the troublesome and often impossible task of proving who died first in a common disaster. Applying the statute to the facts of this case would produce an equitable result and it would remove from speculation the question of whether or not the interest of Eugenie E. Goldsmith in the Graham trust did or did not vest.
It is therefore our judgment that Section 736.05(2), F.S.A. the Uniform Simultaneous Death Law applies to the facts of this case and rules the question of succession to the George M. Graham trust and being so, the estate of Eugenie E. Goldsmith is entitled to share equally with the other remaindermen in the corpus of the trust, as set up by Article 15 of the Graham will.
The decree of the chancellor is therefore affirmed.
Affirmed
SEBRING, C.J., and THOMAS and BARNS, JJ., concur.