**ESTATE of Ellen M. WIEN, Deceased, et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 27828.**

United States Court of Appeals,
Fifth Circuit.

April 12, 1971.

Tuttle, Circuit Judge, dissented and filed opinion.

---

David J. Harris, Karl W. Windhorst, Atlanta, Ga., for petitioners; Smith, Cohen, Ringel, Kohler, Martin & Lowe, Cuba, Cuba & McNatt, Atlanta, Ga., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div. U. S. Dept. of Justice, Richard M. Hahn, Acting Chief Counsel, I. R. S., Christopher J. Ray, Atty., I. R. S., Meyer Rothwacks, Jonathan S. Cohen, Janet R. Spragens, Issie L. Jenkins, Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., for respondent.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The taxpayers and the government both seek us to referee this mortal combat involving the taxation of life insurance policies. We have examined both sides in their polarization and, forsaking their extreme positions, pitch our tent of conclusion midway between their extremes. Thus in remanding we satisfy neither party in our solution to this necrological dilemma.

On June 3, 1962, Sidney and Ellen Wien, domiciliaries of Atlanta, Georgia, were killed in an airplane crash at Orly Field, Paris, France. It was stipulated that the circumstances of the crash were such that it was impossible to determine whether Ellen or Sidney Wien died first or whether they died at the same moment. At the time of their deaths the Wiens were married and the parents of two children, Joan Wien and Claire Wien Morse. Joan was killed with her parents in that fatal crash, leaving Claire Wien Morse as their sole survivor.

At the time of her death Ellen Wien owned fifteen insurance policies having a face value of $150,000 on the life of her husband. In each policy Ellen was named primary beneficiary, and the children were named secondary beneficiaries. Similarly, at the time of his death Sidney Wien owned seven insurance policies having a face value of $100,000 on the life of his wife. In each policy Sidney was named the primary beneficiary, and the children were named secondary beneficiaries.

At the time of the Wien tragedy Georgia law provided that where an insured and a beneficiary are killed in a common disaster under circumstances where it cannot be established who died first, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary. As a result, after the Wiens' deaths had been established, the insurance companies paid the proceeds of the policies directly to the only surviving beneficiary, Claire Wien Morse. The funds never went to either Sidney's or Ellen's estate. Consequently this case is

not concerned with the taxation of proceeds accruing to the beneficiary of an insurance policy. Both the government and the taxpayers agree that neither deceased had any taxable interest by virtue of their status as a beneficiary. The argument instead concerns the ownership interest which each deceased owned in the various insurance policies on the life of the other.

In the estate tax return filed by Sidney Wien's estate, the Executor included $21,853.57 as the amount representing Sidney's ownership interest in the policies insuring Ellen's life. This figure was based on the value of the interpolated terminal reserves of those policies. In the estate tax return filed by Ellen Wien's estate, the Executor included $96,071.55 as the amount representing Ellen's ownership interest in the policies insuring Sidney's life. This figure was also based upon the value of the interpolated terminal reserves of those policies. The Commissioner sent each estate a notice of deficiency, alleging that the value of Mr. Wien's ownership interest in the policies on Mrs. Wien's life was $182,256.05, the total proceeds paid to Claire Wien Morse from the policies insuring Ellen's life. Mrs. Wien's estate was similarly assessed. The Commissioner asserted that the value of her ownership interest in the policies on Mr. Wien's life was $253,678.63, the total proceeds paid to Claire Wien Morse as a result of the life insurance on Sidney's life.

The taxpayers contested these deficiencies assessed by the Commissioner, and suit was brought in the Tax Court. Before that court the taxpayers went one step further and demanded a refund for the amount they had actually included in the respective estates, asserting that no amount should be included as a result of the decedents' ownership interests in the various insurance policies.

The Tax Court, basing its decision on its earlier opinion in Estate of Robert M. Chown, 1968, 51 T.C. 140, rev. Chown v. Commissioner of Internal Revenue, 9 Cir. 1970, 428 F.2d 1395, held that "the absolute and unrestricted owner of life insurance policies on the life of another possesses at the instant of his simultaneous death with the insured, property rights which are includable in his 'gross estate' at a value equal to the entire proceeds payable under the terms of the policies." Wien v. Commissioner of Internal Revenue, 1968, 51 T.C. 287, 289. The court therefore concluded that $253,678 should have been included in Ellen's estate in respect to her ownership interest in the insurance on Sidney's life, and that Sidney's estate should have included $182,256.05 in respect to his ownership interest in the insurance on Ellen's life. The taxpayers have appealed from this decision, and we reverse.

## I.

We begin our discussion by examining the estate tax liability which accrues as a result of an ownership interest in the normal situation when the owner of an insurance policy on the life of another predeceases the insured. While courts have disagreed about the proper value to assign to the ownership interest in such a policy, it has always been supposed that the ownership rights, i. e., the power to borrow against the policy, the power to change the beneficiary, and the power to surrender the policy for cash, constituted a valuable property interest. United States v. Ryerson, 1941, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819; Powers v. Commissioner of Internal Revenue, 1941, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817; Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813; Commissioner of Internal Revenue v. Edwards, 7 Cir. 1943, 135 F.2d 574. Consequently, when the owner of such a property interest predeceased the insured, the value of this ownership interest was included in the estate of the deceased under I.R.C. § 2033 or its predecessors. United States v. Stewart, 9 Cir. 1959, 270 F.2d 894, cert. denied, 361 U.S. 960, 80 S.Ct. 588, 4 L.Ed.2d 542; DuPont's Estate v. Commissioner of Internal Revenue, 3 Cir. 1956, 233 F.2d 210, cert. denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79; California Trust Co.

v. Riddell, S.D.Cal.1955, 136 F.Supp. 7; Donaldson v. Commissioner of Internal Revenue, 1959, 31 T.C. 729.

The taxpayers have argued, however, that since Mr. and Mrs. Wien died in a common disaster these normal estate tax consequences are inapplicable. The taxpayers contend instead that neither Ellen nor Sidney possessed any ownership interest in the policies which passed through their estates at death. The basis of the taxpayers' argument seems to rest upon the premise that the ownership interest in an insurance policy is extinguished or terminated when the policy matures as a result of the death of the insured. They reason that since Sidney died, Ellen's ownership rights in the policies insuring his life were extinguished, thus no property interest was left in her estate to which the estate tax could apply. The taxpayers, of course, make a similar argument with respect to Sidney's ownership interest in the policies insuring Ellen's life. While we agree with the taxpayers premise that ownership rights are extinguished at the moment the insured dies, we think the taxpayers' conclusion that nothing was left in either owner's estate results from failure to appreciate the consequences of the Georgia simultaneous death act.

■■ The Georgia version of the Simultaneous Death Act dealing with insurance proceeds provides:

*Simultaneous deaths.*—Where the individual insured or the annuitant and the beneficiary designated in a life insurance policy or policy insuring against accidental death or in an annuity contract have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy or contract shall be distributed as if the insured or annuitant had survived the beneficiary, unless otherwise specifically provided in the policy or contract. Payment made in accordance with the provision of this section shall fully discharge the insurer from all claims under the policy or contract unless before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such person claims to be entitled to such payment or some interest in the policy or contract. Ga.Code Ann. § 56–2426.

Once it is found that the actual order of the parties' respective deaths is not ascertainable, the statute applies so as to make a certain property disposition mandatory regardless of the factual circumstances which might have obtained at the time of the parties' demise.[1] In other words, the statute makes the actual circumstances irrelevant and provides that for purposes of distribution the property will be disposed of as if the insured survived the beneficiary. Here the parties stipulated that there was no evidence as to whether Ellen or Sidney died first or whether they died at the same moment. The Georgia simultaneous death act must therefore apply and govern the distribu-

---

1. It has been suggested that the simultaneous death act may not apply in cases where it is improbable that the parties died simultaneously. We think that whether or not the parties actually died at the same moment is completely irrelevant. Although the literal language of the statute provides that it will apply if there is not sufficient proof that the parties have died otherwise than simultaneously, this has never been supposed to require proof that the parties actually died at the same instant. Rather, the uniform interpretation of virtually identical statutes has been that they apply in all cases of a common disaster where it is impossible to prove which of the parties died first, e. g., Miami Beach First National Bank v. Miami Beach First National Bank, Fla. 1951, 52 So.2d 893; Brown v. Lee, Tex. 1963, 371 S.W.2d 694; Sauers v. Stolz, 1950, 121 Colo. 456, 218 P.2d 741; United Trust Co. v. Pyke, 1967, 199 Kan. 1, 427 P.2d 67. We think this interpretation is consonant with the purpose of the act—to solve the problem of the proper devolution of property when distribution depends upon the order of death and the circumstances are such that the order of death is not ascertainable.

tion of the policy proceeds and ownership rights.

Consequently, Ellen, as the owner-beneficiary of the policies on Sidney's life, is treated for property purposes as if Sidney still survived at the instant of her death. Since it is Sidney's death alone which could have caused the extinguishment of Ellen's ownership rights, it is clear that under state law Ellen's ownership rights were intact and in her estate at the moment of her death. The same is true with regard to Sidney's ownership interest in the policies insuring Ellen's life, for Ellen's death alone could extinguish those ownership rights. Since Sidney, as the owner-beneficiary, is treated as if he predeceased Ellen, his ownership interest in the policies insuring Ellen's life was intact and in his estate at the moment of his death.

■ It is also clear that these state law consequences govern what the decedent owns for purposes of estate taxation. The federal taxing statutes merely determine how that interest shall be taxed. Rogers v. Helvering, Commissioner of Internal Revenue, 1943, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134; Morgan v. Commissioner of Internal Revenue, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; cf. Commissioner of Internal Revenue v. Bosch's Estate, 1967, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886. This principle was reiterated emphatically by this court in Aldrich v. United States, 5 Cir. 1965, 346 F.2d 37, where we said:

"The estate tax is imposed on the transfer of the estate.[1] The value of the estate is determined by including the value at the time of his death of all property of the decedent except real property situated outside of the United States.[2] What property the decedent owned at the time of his death must be determined by state law. Speaking of proceeds of life policies, this Court said in Flick's Estate v. Commissioner of Internal Revenue, 5th Cir., 1948, 166 F.2d 733, 737:

'* * * all questions as to the title and ownership of property by the decedent must be determined by the law controlling the ownership and disposition of personal property of the state of the residence of the decedent, which in this case was Florida. Federal law does not settle questions of title to property.'

Again in McGehee v. Commissioner of Internal Revenue, 5 Cir., 1958, 260 F.2d 818, 821, it was held that 'the character and extent of the property rights which passed to the decedent's husband by her will are to be determined by the law of Florida.'

The controlling principles of law as we understand them are well stated in the government's brief as follows:

'It is now well established that state law is determinative of the rights and interests in property subject to federal estate taxation. In Morgan v. Commissioner [of Internal Revenue], 309 U.S. 78 [626], 60 S.Ct. 424, 84 L.Ed. 585 (1940), the Supreme Court said (p. 80 [60 S.Ct. at 426]): "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Estate of Rogers v. Commissioner [of Internal Revenue], 320 U.S. 410, 414, 64 S.Ct. 172, 88 L.Ed. 134 (1943); United States v. Dallas Nat. Bank, 152 F.2d 582 (C.A. 5th 1945); Smith's Estate v. Commissioner [of Internal Revenue], 140 F.2d 759 (C.A.3d 1944). See Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); Commissioner [of Internal Revenue] v. Chase Manhattan Bank, supra [259 F.2d 231 (5 Cir. 1958)], p. 249; United States v. Hiles (C.A. 5th 1963) [318 F.2d 56]. * * * The courts must determine the substance of the state property law provisions and apply the estate tax

provisions to the property interests so determined.' "

346 F.2d at 38–39 (footnote omitted).

Applying these principles to the instant case we conclude that Ellen, as the owner-beneficiary of policies insuring Sidney's life, had under Georgia law at the time of her death an ownership interest which was a valuable property right, and that the value of this interest must be included in her estate under § 2033. Similarly, we conclude that Sidney, as the owner-beneficiary of policies insuring Ellen's life, had at the moment of his death an ownership interest which was a valuable property right, and that the value of that interest must be included in his estate under § 2033.

## II.

Having once determined that both decedents at the moment of death had existing ownership interests in the policies insuring the life of the other, the value of which is includable in their respective estates, it becomes necessary to determine the value of those respective ownership rights. The answer to this question is not without doubt because, as we noted earlier, the courts dealing with the normal situation, not complicated by a common disaster, have found it difficult to agree on a method of valuation. Some courts have determined that the cash surrender value of the policy is the amount which ought to be included in the estate of the deceased owner. United States v. Stewart, *supra*; California Trust Co. v. Riddell, *supra*. Others have concluded that it is the cost or replacement cost of the policy which should be included, Donaldson v. Commissioner of Internal Revenue, *supra*; Guggenheim v. Rasquin, *supra*, or, if the policy cannot be purchased, then the value is to be based on the interpolated terminal reserve. DuPont v. Commissioner of Internal Revenue, *supra*; Commissioner of Internal Revenue v. Edwards, 7 Cir. 1943, 135 F.2d 574 (gift tax). We think that those courts which have used cost, replacement cost or the interpolated terminal reserve have employed the proper method of valuation. In Guggenheim v. Rasquin, *supra*, the Supreme Court, in adopting cost as a proper measure of the value of a recently purchased single premium policy, clearly indicated its disapproval of the cash surrender method of valuation. The Court said:

"Surrender of a policy represents only one of the rights of the insured or beneficiary. Plainly that right is one of the substantial legal incidents of ownership. See Chase National Bank v. United States, 278 U.S. 327, 335, 73 L.Ed. 405, 407, 49 S.Ct. 126, 63 A.L.R. 388; Vance on Insurance, 2d ed. pp. 54–56. But the owner of a fully paid life insurance policy has more than the mere right to surrender it, he has the right to retain it for its investment virtues and to receive the face amount of the policy upon the insured's death. That these latter rights are deemed by purchasers of insurance to have substantial value is clear from the difference between the cost of a single-premium policy and its immediate or early cash-surrender value—in the instant case over $135,000. All of the economic benefits of a policy must be taken into consideration in determining its value for gift-tax purposes. To single out one and to disregard the others is in effect to substitute a different property interest for the one which was the subject of the gift. * * *" 312 U.S. at 257, 61 S.Ct. at 509.

The Supreme Court in a related case held that where a substantial period of time had elapsed between the purchase of a single premium policy and the date of the gift of that policy, the ownership rights were to be valued at their replacement cost at the date of the gift. United States v. Ryerson, *supra*. In short, the Court has indicated that market value measured in various ways at the date of valuation is the proper standard to be used. The Commissioner has followed these instructions in the regulations concerning the valuation of ownership rights in policies where a gift tax is involved,

Treas.Reg. § 25.2512–6, and where the estate tax is involved, Treas.Reg. § 20.-2031–8. However, the Commissioner has also recognized the distinction noted by the Supreme Court in Guggenheim v. Rasquin, *supra*, between a single premium policy, where the cost or replacement cost can be determined by the sale of comparable contracts, and the ordinary life insurance policy, such as those involved here, where the contract has been in force for some time and further premiums are due. For the latter type of policy the Commissioner has provided that the taxpayer may approximate market value by relying on the interpolated terminal reserve since the value cannot be conveniently determined by the sale of comparable contracts. Treas.Reg. 20.2031–8 provides:

"§ 20.2031–8 *Valuation of certain life insurance and annuity contracts; valuation of shares in an open-end investment company.*

(a) *Valuation of certain life insurance and annuity contracts.* (1) The value of a contract for the payment of an annuity, or an insurance policy on the life of a person other than the decedent, issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts. * * *

(2) As valuation of an insurance policy through sale of comparable contracts is not readily ascertainable when, at the date of the decedent's death, the contract has been in force for some time and further premium payments are to be made, the value may be approximated by adding to the interpolated terminal reserve at the date of the decedent's death the proportionate part of the gross premium last paid before the date of the decedent's death which covers the period extending beyond that date. If, however, because of the unusual nature of the contract such an approximation is not reasonably close to the full value of the contract, this method may not be used."

The parties here, both the Commissioner and the taxpayers, have argued, however, that the method of valuation provided in Treas.Reg. 20.2031–8(a) (2) is not applicable to the present situation because the owner and the insured died in a common disaster. The Commissioner, while admitting that Reg. 20.2031–8 (a) (2) would apply if either decedent had predeceased the other, asserts that in this common disaster situation the ownership interest should be valued at the full amount of the proceeds paid as a result of the death of the insured. His argument is that because the parties died at the same instant the owner had at the moment of death the power to control the disposition of the full proceeds, and thus his ownership interest was worth the full proceed value. This proceed value, the Commissioner asserts, constitutes the market value of the ownership interest. In rejecting this argument the court in Chown v. Commissioner of Internal Revenue, 9 Cir. 1970, 428 F.2d 1395, 1398, said:

"The Tax Court held the regulation inapplicable, not because of the unusual nature of the contract, but because the deaths of Harriet and Roger were, as it found simultaneous. It stated the proposition in this way:

'We find that 20.2031–8(a) (1) states the general rule that fair market value is to be used, and that paragraph (a) (2) is intended only to provide an approximation, in limited circumstances, of the value that would result from the general rule. Under the circumstances of this case, we hold the approximation under paragraph (a) (2) is obviously improper because it results in a valuation that is not consistent with the actual fair market value of the policy at the time of Harriet's death, which under the facts we hold to be an amount equal to the proceeds payable under the policy. As we see it, at the time Harriet died, the policy must be treated as fully matured.' [51 T.C. at 143.]

The primary difficulty with this reasoning is that it must be based upon the assumption that Roger died first; nothing but Roger's death could 'fully mature' the policy. And when that happened, Harriet's ownership interest disappeared; her rights to change the beneficiary, surrender the policy, assign it, or borrow on it had vanished. The only conceivable interest that she could have by reason of Roger's death was as beneficiary, but that interest never came to fruition as the Tax Court correctly held.

Yet the Tax Court's reasoning is based upon the proposition that the policy became fully matured at the instant of Roger's and Harriet's deaths, thereby giving to her ownership interest the full value of the proceeds, which, for that fleeting instant, became the fair market value of her ownership interest. The notion that any one would have paid such an amount, or any amount at all, for that fleeting interest is a bit of metaphysics that we cannot accept. It rests on an assertion that what one at the same instant 'acquires' and 'loses' one *has* rather than *has not* at that instant:

\* \* \* " 428 F.2d at 1398.

■ We agree with this reasoning. State taxation is not based on such "now you see it, now you don't" concepts. Moreover, we note that the Commissioner's argument rests in part upon the assumption that the parties did die at the same instant, thus causing the maturity of the polices to coincide with the instant of the owner's death. We think this finding of simultaneous death is unsupported by the evidence and does not follow from the mere application of the Simultaneous Death Act. It was stipulated that it was impossible to determine whether Ellen or Sidney died first or whether they died at the same moment. These facts are sufficient to make the simultaneous death act apply for purposes of property disposition, but the application of that act is not tantamount to a finding that the parties in fact died simultaneously. Rather, the application of the act, as we have previously noted, simply makes the actual order of death irrelevant and mandates that the property be disposed of as if the insured survived the beneficiary. Thus, the Commissioner's and the Tax Court's reliance on a finding that the parties died simultaneously is completely misplaced.

An even more fundamental difficulty exists in the Commissioner's argument. In essence he is arguing that to value the interest of the owner it is permissible to look at the fact that the insured died at the same moment. Regardless of whether the deaths can be assumed to be simultaneous or not, the principal issue is whether it is proper to investigate the imminence of the insured's death in determining the value of the owner's interest. If such a peek at the insured is not permitted, the Commissioner's entire argument fails.

The taxpayers, while arriving at a different conclusion as to value, have in effect followed the Commissioner's major premise and have looked to the fact that the insured died in valuing the ownership interests. They conclude that a buyer would have paid nothing for the ownership rights in the policies because those interests were going to be immediately extinguished by the death of the insured. In short, the taxpayers argue that because the parties died in a common disaster the real value of the ownership interests were zero.

■ We think that both parties have erred in looking at the fact of the insured's death in valuing the ownership rights, and that the disparity in their valuation determinations are a consequence of this error. We note that the Commissioner's regulation, § 20.2031–8, makes no distinction in valuation based on the imminence of the insured's death. The only exception stated in the regulation concerns an alternate value if the contract is unusual. Here, from all that appears, we are dealing with perfectly ordinary life insurance contracts. The Commissioner applied a different value

to the ownership rights, not because the contracts were unusual, but because the *facts* surrounding the death of the owner and the insured were unusual. We note further, as did the court in *Chown, supra,* at 1399, that no court has ever held that the interpolated terminal reserve method provided in the regulations was improper because the insured could be expected to die shortly. The court in *Chown* noted:

"No case has been called to our attention in which the executor's method of valuation was held to be improper because the insured's death was imminent at the time of the death of the owner of the policy. Yet we find it hard to believe that such cases have not occurred. The occurrences of such fatal illnesses as heart attacks, unsuspected but incurable cancer, and many others, followed by a brief period of life, but with early death a virtual certainty, are too frequent for us to think otherwise." 428 F.2d at 1399.

We think that the principles of estate taxation preclude consideration of such facts as the actual state of the insured's health or peril in valuing the owner's property interest. Indeed it would bring virtual disaster upon the integrity of estate taxation if the value of an ownership interest fluctuated with the probable longevity of the insured. Any valuation method depending upon such an uncertain measure as the day-by-day health of an individual insured would be impossible to enforce accurately. Old Kent Bank and Trust Co. v. United States, 6 Cir. 1970, 430 F.2d 392. There are simply no actuarial computations which can be applied to an individual illness or accidental circumstance which will accurately predict the probability of death. For this reason the standard mortality tables on which the interpolated terminal reserve is based, rather than ad hoc medical prognosis, have always been the norm for estate tax valuations. Yet here because there is a common disaster involved both the Commissioner and the taxpayers suggest that we depart from the norm and value the policy on the basis of the individual insured's probability of death. We think considerations of this sort are as unmanageable when a common disaster is involved as they are in the ordinary case.

 It is settled that the estate tax attaches to the value of the property at the instant of the deceased's death. United States v. Land, 5 Cir. 1962, 303 F.2d 170, cert. denied, 371 U.S. 862, 83 S.Ct. 121, 9 L.Ed.2d 100. It is also clear that in the present case, at the moment of Mrs. Wien's death, no one knew or could have known whether Mr. Wien would survive or not. There are no actuarial figures to apply to this situation. Both the Commissioner and the taxpayers of necessity took a post mortem look and determined that the insured did die, a fact which no buyer at the instant of the owner's death could have known. This method of valuation flies in the face of established precepts of appraisal based upon actuarial life expectancies at the instant of death as reflected by the interpolated terminal reserve. Before we would sanction such ad hominem determinations of valuation based on post mortem peeks at individual mortality, congressional authorization would be necessary.

Moreover, we think the Supreme Court has rejected such individual ad hoc determinations. In Commissioner of Internal Revenue v. Noel, 1965, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159, the decedent purchased insurance policies on his own life and delivered them to his wife before embarking on a fatal airplane fight. The taxpayer argued that the proceeds should not be included in the decedent's estate under I.R.C. § 2042 (2), since under the peculiar circumstances the deceased could not possibly have exercised his ownership rights in the policies. The Court rejected this argument, saying:

"Obviously, there was no practical opportunity for the decedent to assign the policies or change the beneficiary between the time he boarded the plane and the time he died. That time was

too short and his wife had the policies in her possession at home. These circumstances disabled him for the moment from exercising those 'incidents of ownership' over the policies which were undoubtedly his. Death intervened before this temporary disability was removed. But the same could be said about a man owning an ordinary life insurance policy who boarded the plane at the same time or for that matter about any man's exercise of ownership over his property while aboard an airplane in the three hours before a fatal crash. It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day-by-day, hour-by-hour capacity to dispose of property which he owns. We hold that estate tax liability for policies 'with respect to which the decedent possessed at his death any of the incidents of ownership' depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment. * * *"

380 U.S. at 684, 85 S.Ct. at 1241.

We think the philosophical underpinnings of the Supreme Court's opinion in *Noel* are applicable to the instant case. The estate tax liability of a person owning an interest in an insurance policy should not depend upon the "fluctuating day-by-day, hour-by-hour" health or peril of the insured individual.

The Commissioner's regulation, § 20.-2031–8, has relieved us of the burden of calculating such imponderables and provides a stable method of estimating the value of an ordinary insurance policy. We think that this regulation is applicable both to the ordinary situation, where the owner dies leaving the insured surviving, and to the unusual situation, where the insured and the owner-beneficiary perish in a common disaster. Old Kent Bank and Trust, *supra*; Chown v. Commissioner of Internal Revenue, *supra*. The regulation bases its value on the interpolated terminal reserve of the insurance policy. This is basically the

value that the insurance company places on the contract, Commissioner of Internal Revenue v. Edwards, *supra* at 576, determined by general mortality predictions, and it appears to be the most sensible way to make the necessary value determinations. To allow either the taxpayers' or the government's method to prevail would destroy this certainty and replace it with fluctuating individual imponderables, concepts with which no court could cope and which the Supreme Court rejected in *Noel*.

We conclude, therefore, that Mrs. Wien's estate tax liability for the ownership interest in insurance policies insuring Mr. Wien's life should be valued according to the procedures outlined in Treas.Reg. § 20.2031–8(a) (2). Mr. Wien's estate tax liability for his interest in those policies on Mrs. Wien's life should be valued in like manner. We remand this case to the court below for a determination of the estate tax liability in accordance with this opinion.

Reversed and remanded.

TUTTLE, Circuit Judge (dissenting).

With deference, I feel that I must express my disagreement with the opinion of the court. My reluctance to do so is heightened by the fact that the decision of our court coincides with somewhat similar decisions by Courts of Appeals of two other Circuits. See Chown v. Commissioner of Internal Revenue, 9 Cir., 1970, 428 F.2d 1395, and Old Kent Bank and Trust Co. v. United States, 6 Cir., 1970, 430 F.2d 392. Of course, in neither of these other cases was there the fact of cross ownership of life insurance on the life of the other spouse.

I do not base my dissent on the theory that the market value of the policies owned by Sidney and Ellen Wien increased from a figure representing the interpolated terminal reserve at the moment before they boarded the ill-fated airplane at Orly Field by thousands of dollars per second as it ran down the field to the face amount of the policies a few seconds after attempted take-off

when it crashed and brought death to all on board except the two stewardesses.

I believe, rather, that here we have a problem of statutory construction which requires that the court find a construction that most clearly falls within the policy of estate taxation. That policy is, briefly stated, that unless life insurance on the life of a decedent belongs to someone else at the time of his death, the proceeds of the policy are a part of the gross taxable estate. If the insurance belongs to another person at time of death, then the proceeds go, tax-free to the decedent, to the named beneficiary. Then, of course, if such beneficiary, having become entitled to such proceeds, dies— no matter how soon or how late thereafter—such proceeds as remain are part of the taxable estate of the beneficiary of the policies.

Here, although the majority says the Tax Court's "finding of simultaneous death is unsupported by the evidence," which means, I suppose, that there are at least strong implications, which I fully share, that either Mr. or Mrs. Wien survived the other for a moment of time, *the face amount of the policies* here escape taxation in either *and* both of the estates.

The court looks to the Simultaneous Death Act as a basis for finding that as to the policies on Sidney's life, Ellen died first, so that there is included in *her* estate, the interpolated terminal reserve value for estate tax purposes. The court then looks to the same act and determines that, as to the policies on Ellen's life, Sidney is assumed to have died first, and thus the interpolated terminal reserve value of the policies he owned was properly includable in *his* estate. The court thus taxes the values of the reserves belonging to *each* spouse as if they *both* died first.

While this conclusion by the court that in the same accident Ellen died first for one purpose, and Sidney died first for another is not basing estate taxation on "now you see it, now you don't concepts," it is basing estate taxation on a physical impossibility, known to everyone to be such.

Moreover, even if the court were required to apply the Simultaneous Death Act separately to each of two spouses entirely independently of its application to the other, I think it clear that the law does not purport to establish the *fact* that as to the policies on Sidney's life, Ellen died first (a predicate on which the court values her interest in the policies she owned on her husband's life). All this statute does is to acquit the insurance company from liability when the stated circumstances here exist. It does not even attempt to create a presumption that the insured survived the beneficiary of the policies. As plainly as words can state it, the Act says: The proceeds *shall be distributed as if* the insured * * * had survived the beneficiary. It then provides that payment so made shall discharge the insurer *unless* before payment is made, some other person makes a claim in writing to the proceeds of an interest in them.[1]

It is impossible for me to see how this statute creates *any* status as dead or alive as to the *owner* of the policies as *owner* at the time of the death of the insured. It does not purport to do so. It merely mandates payment as if the *beneficiary* died first. It does not purport to create any property rights in the successors of an *owner* of the policies, which is essential to the reasoning of the court which posits its theory of taxation of the reserve values to each spouse's estate on the fact that the rights of ownership in such estate were "intact" upon his or her death. It happens here that the owner of each group of policies was also the beneficiary, but the statute merely provides that as *beneficiary* of Sidney's

---

1. It is interesting to speculate what the court would say here if, immediately upon learning of the death, the United States government had filed a claim to an "interest" in the funds. Then, under the literal words of the statute not even an "as if" payment would be warranted.

policies, Ellen takes none of the proceeds, because payment will be made *as if* she died first. This does not touch on the question whether for all other purposes, including federal estate tax purposes, dealing with ownership of an *interest* in policies as property, Ellen died first. (And vice versa).

This discussion of what is or is not accomplished by the Georgia statute is relevant only, I think, because it forces us to one of two results. Either we accept the decision of the Tax Court that the parties died simultaneously, or we conclude that the Tax Court should explore the probability that they did not die simultaneously, in which event clearly the tax gatherer would be losing a substantial tax, under the decision of the majority. In such a situation, since the face amount of the policies on one of the couple would have passed to, and become a part of, the other's estate upon his or her swiftly occurring death, the taxable estates of the *couple* would be enhanced by the face amount of one and the reserve values of the policies belonging to the other. Such a determination does no violence to the construction of the Simultaneous Death Act, for, as I think I have demonstrated, that Act does not purport to create property rights which affect federal taxes.

Since the appellants challenge the assumption of simultaneous deaths, and since (as the majority opinion points out) "th[e] finding of simultaneous death is unsupported by the evidence, and does not follow from the mere application of the Simultaneous Death Act," I would think the appropriate method of disposing of the case would be to permit the Tax Court to take such testimony as is available (opinion evidence of experts or computers or both) as to the likelihood of actual simultaneous deaths of two persons under such circumstances as here obtained. If such likelihood was es-

tablished to be so remote as to warrant a finding that the deaths were *not* simultaneous, then the Tax Court would be required to determine the effects of such finding.

The alternative to this method of disposing of the case is to proceed on the assumption that the deaths were, for tax as well as payment-of-proceeds purposes, simultaneous. That would bring us squarely face to face with the question as to the value of the ownership of a policy by A which he owns on the life of B when the occurrence causing this value to be taxed is also the occurrence which terminates it. In order for this interest to be taxed in the manner adopted by the Tax Court, by the majority here, and by the *Chown* and *Old Kent* cases all must assume that what one, at the same instant, *owns* and *loses* he *has* rather than *has not* at that instant.'[2]

It seems to me that we must face up squarely to the problem of valuing an interest that is destroyed by the same act which creates the incidence of its taxation.

My solution, assuming simultaneous deaths, would be to adopt substance over form, and tax each estate with the face value of the insurance on the life of the decedent. The deaths of the *two insureds* simultaneously (as now assumed) accomplished the payment of the face amount of all policies *to persons who owned no interest in the policies,* since neither Mrs. Wien nor her husband was able to transmit his interest in his spouse's policies because the spouse's simultaneous death extinguished the interest of the owner.

At the moment of death *all* incidents of ownership merged into the obligation of the companies to pay the face amount of the policies to contingent beneficiaries. Put another way, if any interests in policies on the life of the other

2. This is a paraphrase from language in Chown by the Ninth Circuit which criticized the government's contention that the true value of the interest owned by the spouse of the decedent equalled the face amount of the policies. That court said that contention "rests on an assertion that what one at the same instant 'acquiries' and 'loses' one has rather than *has not* at that instant." 428 F.2d 1398.

passed from either spouse by his or her death, if passed by will at the instant of death to the other spouse, thus merging all interests in each insured. Under such theory, of course, face amounts of the policies would be taxable to the estate of each insured spouse.

I think the likelihood of absolute simultaneous death is so remote that I think both taxpayer and the Commissioner are entitled to have that fact determined so that the tax events flowing therefrom can properly be assessed. This would not remotely affect the benefits sought and achieved by the Uniform Simultaneous Death Act. On the other hand, such an Act, providing for a prompt and safe rule for payment, as between those representing the insured and those representing the beneficiary, should not be construed to affect the taxability of property if, in fact, evidence is adduced which would convince the Tax Court that the parties died "otherwise than simultaneously" although no party could decide which died first.

The disposition made by the majority, although inconsistent with what I have expressed here, is, of course, much more nearly in line with what I believe to be the intent of Congress than any construction that would find both proceeds *and* interests of owners of the policies free of estate taxes.

This, as is said in the majority opinion, is a case which presents questions the answer to which are not without doubt. However, I think there can be no doubt about the proposition that, for purposes of includability of any property in either estate for estate tax purposes, the Georgia Simultaneous Death statute does *not create* or *keep intact* any ownership rights in either spouse in the life insurance on the other spouse's life. This being the major premise on which all else hinges in the majority opinion, I think that, if these policies or ownership in them are to be taxable for estate tax purposes at all, it must be on some different theory.

In sum, I think the true facts should be established—that is, that one of the couple died first (even momentarily) if that be the fact. Alternatively, I think that if all ownership rights were extinguished at *simultaneous* death, if that should be the finding, then all rights merged into the insureds at the moment of their death and all was part of the taxable estate.