501 F.2d 1213
 Orval M. RHODES and William A. Guffey, as Co-Administrators
of the Estate of Moris O. Rhodes and Beverly J.
Rhodes, Deceased, Plaintiffs-Appellees,
v.
REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.
 No. 72-2505.
 United States Court of Appeals, Ninth Circuit.
 July 1, 1974, Rehearing Denied Sept. 12, 1974.
 
 Robert W. Holland (argued), Carson, Messinger, Alliott, Laughlin & Ragan, Phoenix, Ariz., for defendant-appellant.
 James P. Cunningham (argued), Cunningham, Goodson, Tiffany & Weltsch, Phoenix, Ariz., for plaintiffs-appellees.
 Before CARTER, GOODWIN and WALLACE, Circuit Judges.
 OPINION
 WALLACE, Circuit Judge:
 
 
 1
 The administrators of the estates of Moris O. Rhodes and Beverly J. Rhodes, deceased, sought a declaratory judgment as to the correct construction of a life insurance policy issued by Republic National Life Insurance Company (the Company) through its predecessor, Pacific National Life Assurance Company. The Company admitted coverage, but argued that its liability was limited to $3,000, rather than $26,625.30 as claimed by the administrators. The district court granted the administrators' motion for summary judgment and entered judgment against the Company in the amount of $23,625.30. The Company appeals and we reverse.
 
 
 2
 On February 11, 1964, Moris Rhodes entered into a contract of life insurance with the Company (the Husband's Policy). Under the policy the Company was liable, upon proof of Mr. Rhodes' death, for a lump sum and for a monthly income benefit until the end of the protection period. In April, 1965, the policy was amended by the addition of a rider entitled 'CHILDREN'S BENEFIT FOR TERM INSURANCE TO AGE 25' (the Children's Benefit Rider) under which the life of each of Rhodes' three children was insured for a lump sum. The Company has settled its liability under the Children's Benefit Rider and Mr. Rhodes' policy and they are discussed here only as background. In April, 1965, the Husband's Policy was also amended by the addition of a rider entitled 'WIFE'S INSURANCE BENEFIT' (the Wife's Benefit Rider). The correct construction of this rider is the subject of this dispute. On September 5, 1970, the Rhodes, together with their children, perished in a flash flood near Payson, Arizona. There was no evidence that their deaths were otherwise than simultaneous.
 
 
 3
 The Wife's Benefit Rider is captioned by the following:
 
 
 4
 WIFE'S INSURANCE BENEFIT FOR ADDITIONAL INSURANCE OVER A TERM PERIOD AND PAYABLE AS A MONTHLY INCOME TO THE END OF THE PERIOD OR UPON ELECTION AS A SINGLE PAYMENT, IF THE INSURED'S WIFE'S DEATH OCCURS DURING THE PERIOD
 
 
 5
 The benefit paragraph of the rider reads as follows:
 
 
 6
 The Company agrees, subject to the terms and conditions of this Provision and the policy, to pay the following benefits immediately upon due proof of the death of the Insured's wife named in the application, while the policy and this Provision are in force:
 
 
 7
 1. For each unit of this benefit shown on page 3 (3 units)
 
 
 8
 a. $1,000 payable immediately in one sum.
 
 
 9
 b. If the wife has not attained age 50, a monthly income of $50 beginning at the date of the Insured's wife's death and payable at monthly intervals until the end of the month in which the Insured's wife would have attained age 50.
 
 
 10
 2. If a Children's Benefit is attached to the policy, it will be continued in force as fully paid-up term insurance to the child's 25th birthday . . ..
 
 
 11
 The Benefit under this Provision is payable in addition to any amount otherwise payable under the policy.
 
 
 12
 This Provision is made a part of the policy to which it is attached, in consideration of the application, a copy of which is attached to and made a part of the policy, and payment of the premiums specified on page 3 applicable to this Benefit and the Life Insurance Benefit.
 
 
 13
 The benefits are limited by the following paragraph:
 
 Benefit After Death of Insured
 
 14
 In the event of the Insured's death while the policy and this Benefit are in force in place of all other benefits hereunder, the Company will issue to the Insured's wife a paid-up term life insurance policy in the amount of $1,000 Sum Insured for each unit of this Benefit shown on page 3, which will expire on the policy anniversary following the Insured's wife's 65th birthday.
 
 
 15
 Upon the wife's death, the proceeds are to be paid according to the following paragraph:
 
 Payment of Proceeds
 
 16
 Any proceeds payable under this Provision because of the death of the Insured's wife will be paid to the Insured, if living, otherwise to the estate of the Insured's wife, unless otherwise provided. The payee may elect to receive the commuted value of such monthly income in one sum. The commuted value shall be computed by discounting the monthly income payable at 3% Interest, compounded annually.
 
 
 17
 The administrators argue that these paragraphs are ambiguous and, thus, under well-established principles (see, e.g., Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 136, 21 S.Ct. 326, 45 L.Ed. 460 (1901); Pacific Mut. Life Ins. Co. v. Young, 40 Ariz. 1, 10, 9 P.2d 188, 191 (1932)) we are required to construe the language against the Company and in favor of insurance coverage. As ambiguities, they point to the fact that the caption does not condition the payment of the monthly benefit upon the survival of the husband, that the benefit is payable in addition to any amounts otherwise payable under the policy, that the payee may be the wife's estate if the insured is not living (indicating that the Company contemplated that the husband might predecease the wife) and that the policy does not provide that the death of the insured prior to the death of the wife is one of the conditions which terminates the benefit.
 
 
 18
 Although we concede that the policy should have been drafted with more clarity and that the Wife's Benefit Rider may be difficult to understand, when it is viewed as part of a package providing insurance protection for the whole family, the paragraphs are not ambiguous. Under the Husband's Policy, the wage earner's life was insured to protect the other members of the family in the event of his death. Under that policy the Company agreed to pay to the wife, upon proof of the husband's death, a lump sum plus a monthly income until the end of the period when the children would normally be expected to have become independent. Thus, the wife was protected with a lump sum to cover burial and other immediate expenses and with a monthly income during the years she would have been responsible for the young children.
 
 
 19
 Under the Children's Benefit Rider the Company agreed to pay the husband, upon proof of a child's death, a lump sum, thus protecting the family from death and burial expenses. Under the Wife's Benefit Rider the Company agreed to pay the husband, upon proof of the wife's death, a lump sum, protecting against burial and death expenses, plus a monthly income until the time when the wife would have reached age 50. Thus, the husband was assured that in the event of his wife's death he would have been able to continue to work and also would have been able to hire a housekeeper and to provide for child care until the children would have become independent. The monthly income coverage, however, was conditioned upon the husband surviving the wife. This is logical since if the husband had predeceased the wife, the children would have received the benefit from the monthly income under the husband's policy. An additional monthly income under the Wife's Benefit Rider would have been double protection. Thus, if the husband had predeceased the wife, the Company under the alternative coverage of the Wife's Benefit Rider would have issued her a paid-up term policy to pay a lump sum at her death, which could have been used for death and burial expenses. The paid-up term life would have expired when she reached age 65.
 
 
 20
 The language of the Wife's Benefit Rider, when viewed in this light, is not ambiguous. Although the caption does not contain any conditions, the first sentence of the first paragraph provides that the Company shall pay the benefits 'subject to the terms and conditions of this Provision (the Wife's Benefit Rider) and the policy . . ..' One of the conditions is that if the husband predeceases the wife, the Company will issue 'in place of all other benefits hereunder' a paid-up term life insurance policy for a lump sum. Consistent with this condition, the paragraph providing for the payment of the proceeds provides that if the husband has predeceased the wife, the proceeds, which would then be only the lump sum, shall be paid to the estate of the wife. It is only natural that the Company would contemplate the prior death of the husband and provide both for a reduction in coverage and for a contingent beneficiary; but that does not make ambiguous the paragraph which reduces the coverage by terminating the monthly income benefit. The clause making the benefit under the Wife's Benefit Rider payable in addition to the other benefits under the policy can reasonably refer only to the benefits under the Husband's Policy and the Children's Benefit Rider. Finally, the policy does not provide that the death of the husband prior to the wife's death terminates the benefit because his prior death only alters the scope of the wife's coverage; it does not completely terminate the benefit. We hold that, when viewed as part of a family insurance package, the Wife's Benefit Rider is not ambiguous.
 
 
 21
 The ambiguity in this case arises only because of the lack of evidence concerning the order of death. The policy does not provide for this contingency; but an Arizona statute does and the parties must be presumed to have contracted with knowledge of the existing statutes. Broenen v. Beaunit Corp., 440 F.2d 1244, 1249 (7th Cir. 1970); In re Clise's Estates, 64 Wash.2d 320, 322, 391 P.2d 547, 549 (1964). Arizona Revised Statute 20-1127 reads:[1]
 
 
 22
 Where the individual insured or the annuitant and the beneficiary designated in a life insurance policy or policy insuring against accidental death or in an annuity contract have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy or contract shall be distributed as if the insured or annuitant had survived the beneficiary, unless otherwise specifically provided in the policy or contract.
 
 
 23
 The Company argues that under this statute Beverly, as the person insured under the Wife's Benefit Rider, must be presumed to have survived her husband, the beneficiary. Thus, the Company argues, at the presumed moment of the wife's death only the reduced benefit was in effect and the Company is liable only for $3,000.
 
 
 24
 The administrators answer by arguing first that the terms of the statute must be given the same meaning as the terms of the policy. Accordingly, they argue, that since Moris is defined as the 'insured' in the Husband's Policy and since he is referred to as the 'insured' in the Wife's Benefit Rider, he must also be deemed to be the 'insured' under the statute. Thus, the administrators conclude that the husband should be presumed to have died last, entitling the estate to the commuted value of the monthly income.
 
 
 25
 This argument is spurious. The terms of the statute must be given their usual meaning, unless they are specifically defined otherwise within the statute. Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). The term 'insured' as used in the statute can only refer to the person whose death triggers the Company's liability for the benefits provided by the policy. See In re Clise's Estates, 64 Wash.2d at 323, 391 P.2d at 549. Under the Wife's Benefit Rider this person was Beverly.
 
 
 26
 The administrators next argue that section 20-1127 does not apply in this case, thus creating an ambiguity that must be resolved in favor of coverage. They reason that the purpose of the simultaneous death act is only to control the distribution of insurance proceeds over the Company's liability has been established, not to aid in determining whether the company is liable in the first instance. They have not cited any authority for this position.
 
 
 27
 Although there is some merit to their argument, we do not believe we can adopt it, primarily because we have already elected to apply a similar simultaneous death act in determining whether a decedent owned, at the time of her death, a property interest in a policy on her husband's life. In Estate of Chown v. Commissioner of Internal Revenue, 428 F.2d 1395 (9th Cir. 1970), we held that a life insurance policy owned by a wife on the life of her husband must be valued for estate tax purposes according to a theory that uses the life expectancy of a man of the husband's age (interpolated terminal reserve value) without consideration of the fact that there was no evidence that the husband died otherwise than simultaneously with the wife. In order to reach the question of valuation we had to conclude that the wife at the time of her death held sufficient incidents of ownership to require that the policy be included in her gross estate.[2] If the husband had predeceased her or had died simultaneously with her, she would not have held any of the required incidents of ownership since her right to change the beneficiary, to surrender the policy, to borrow on it or to assign it would have been extinguished at the death of the insured. Estate of Wien v. Commissioner of Internal Revenue, 441 F.2d 32, 35 (5th Cir. 1971). In assuming that Mrs. Chown held the required incidents of ownership, we relied upon the Oregon Uniform Simultaneous Death Act[3] under which, for purposes of distributing the proceeds, the beneficiary is presumed to have predeceased the insured. Thus, we held that the insurance policy had to be valued as if the wife had preceded the husband in death. 428 F.2d at 1397.
 
 
 28
 Three other circuits, also relying upon simultaneous death acts, have reached this same conclusion. Estate of Wien v. Commissioner of Internal Revenue, 441 F.2d 32 (5th Cir. 1971); Estate of Meltzer v. Commissioner of Internal Revenue, 439 F.2d 798 (4th Cir. 1971); Old Kent Bank & Trust Co. v. United States, 430 F.2d 392 (6th Cir. 1970). In Estate of Wien v. Commissioner of Internal Revenue, the Fifth Circuit, after reviewing the purpose of the simultaneous death act, stated:
 
 
 29
 Consequently, Ellen, as the owner-beneficiary of the policies on Sidney's life, is treated for property purposes as if Sidney still survived at the instant of her death. Since it is Sidney's death alone which could have caused the extinguishment of Ellen's ownership rights, it is clear that under state law Ellen's ownership rights were intact and in her estate at the moment of her death.
 
 
 30
 441 F.2d at 36. The court explained that in determining questions of ownership of property for purposes of taxation it must apply state law and stated:
 
 
 31
 Applying these principles to the instant case we conclude that Ellen, as the owner-beneficiary of policies insuring Sidney's life, had under Georgia law at the time of her death an ownership interest which was a valuable property right, and that the value of this interest must be included in her estate under 2033.
 
 
 32
 441 F.2d at 37. In Wien, the Fifth Circuit did expressly what we did implicitly in Chown; it relied upon the simultaneous death act to conclude that the decedent had an ownership interest in the insurance policy at the time of death.
 
 
 33
 We recognize that under the simultaneous death act the insured is not presumed to have survived the beneficiary for all purposes, but only that the proceeds of the policy shall be distributed as if the insured had survived the beneficiary. Indeed, in Wien the Fifth Circuit stated that 'the application of that act is not tantamount to a finding that the parties in fact died simultaneously. Rather, the application of the act . . . simply makes the actual order of death irrelevant and mandates that the property be disposed of as if the insured survived the beneficiary.' 441 F.2d at 39. But if we were to construe the act to be applicable only once the insurance company's liability is established, we would have to ignore the fact that we and the other circuits have relied upon the act for determinations other than the distribution of proceeds. To do so, we would need to carve out an artificial exception to a well-recognized statutory interpretation. This we are not justified in doing. In addition, by so limiting the application of the act we would limit its usefulness in resolving problems of construction when the parties fail to anticipate such contingencies in advance.
 
 
 34
 We conclude, therefore, that the Wife's Benefit Rider must be construed as if Moris had predeceased Beverly, thus reducing her coverage to include only a paid-up term life policy for a lump sum of $3,000.
 
 
 35
 Reversed.
 
 
 36
 ALFRED T. GOODWIN, Circuit Judge (specially concurring):
 
 
 37
 I agree with the reasoning, and concur in the opinion of the court. But I devoutly hope that this court's ability, after much study, to make some sense out of the mindless draftsmanship we found here will not be interpreted by the insurance industry as 'approval' of the contract language which caused all this mischief.
 
 
 
 [1]
 Ariz.Rev.Stat. 14-2808, dealing with the succession of estates, is similar to section 20-1127:
 Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, but if the policy is community property of the insured and his spouse and there is no alternative beneficiary, or no alternative beneficiary except the estate or personal representatives of the insured, the proceeds shall be distributed as community property under (section 14-2807).
 Since the issue in this case deals primarily with a question of insurance rather than succession, we have applied section 20-1127.
 
 
 [2]
 Int.Rev.Code of 1954, 2042
 
 
 [3]
 The statute involved in Chown provided:
 Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary.
 428 F.2d at 1396.